UNITED STATES of America ex rel.
Harold R. FINE, Plaintiff,

v.

ADVANCED SCIENCES,
INC., Defendant.

No. Civ. 91–0794 JC/WWD.

United States District Court,
D. New Mexico.

Jan. 6, 1995.

Duff Westbrook, Maureen Sanders, Albuquerque, NM, for plaintiff.

Pamela J. Mazza, Andrew P. Hallowell, Philip M. Dearborn, Piliero, Mazza & Pargament, Washington, DC, Gary King, Advanced Sciences, Inc., Albuquerque, NM, for defendant.

---

## MEMORANDUM OPINION

CONWAY, Chief Judge.

THIS MATTER came on for consideration of the Defendant's Motion to Dismiss, filed November 19, 1993. The Court converts this motion to a Motion for Summary Judgment. After reviewing the motion and the memoranda submitted by the parties and after hearing oral arguments, the Court finds that the motion is **well taken** and will be **GRANTED.**

The Relator[1], Harold R. Fine, makes his claims under the *qui tam* provisions of the Fraud Claims Act (FCA). 31 U.S.C. § 3730. The Defendant argues that the Court should dismiss the Relator's claims on two grounds. First, as a past employee of the Office of the Inspector General in the Department of Energy (IG/DOE), the Relator is barred from bringing a *qui tam* action because of the conflict between the FCA and the Inspector General Act (IGA). 5 U.S.C. app. 3 §§ 1–12. Second, the Defendant argues that the Relator fails to satisfy the jurisdictional requirements set out in the FCA.

## BACKGROUND

The IG/DOE employed Harold Fine from 1982 until his resignation on July 15, 1991. The IG/DOE conducts audits and investigations of government contractors to determine whether they follow the regulations and rules governing the performance of federal contracts. Specifically, the IG/DOE monitors the reimbursable costs claimed by government contractors to make sure the costs are deductible under the relevant contract and regulations. The IG/DOE then creates a report detailing the audits and their findings. Mr. Fine's duties at IG/DOE included managing and supervising audits and the preparation of audit reports.

After reviewing audits of Advanced Sciences, Inc. (ASI), Mr. Fine concluded that ASI was intentionally requesting reimbursement for costs that were unreimbursable under the contracting regulations. Therefore, he referred the matter to the investigative branch of IG/DOE, but no actions were taken. Just one month after his resignation from the IG/DOE, Mr. Fine brought this *qui tam* action based on the information regarding ASI he obtained through his job.

Before filing his *qui tam* action, Mr. Fine revealed the information regarding ASI's submissions of costs on four occasions. First, Mr. Fine sent a letter unauthorized by his superiors dated March 20, 1990 to Richard Kaheny, Director of Contracting at White Sands Missile Range. This letter contained Mr. Fine's interpretation of the adequacy of ASI's accounting system and financial controls. Second, Mr. Fine gave Donald Sikora, a "volunteer leader" of the American Association of Retired People for New Mexico, a memorandum dated April 9, 1990 and the March 20 letter that he sent to Richard Kaheny. Mr. Fine prepared the April 9 memorandum and entitled it "Referral of Possible False Claims by Contractor." In it, Mr. Fine expressed his concerns regarding ASI to the investigative branch of IG/DOE. Third, Mr. Fine also gave a copy of the March 20 letter to Burt Mazer, an accountant with a private firm, to get his opinion on Mr. Fine's analysis of ASI's accounting system. Fourth, Mr. Fine's attorney, Duff Westbrook, sent a letter to Senator David Pryor in which he generally explained Mr. Fine's allegations concerning ASI among other matters.

### *Qui Tam* Actions and the FCA

The first step in the analysis is to briefly review the *qui tam* provisions of the FCA. Section 3730 allows for persons who know of

---

1. In *qui tam* actions, the individual who brings the suit on behalf of the United States is referred to as the relator. Technically, the United States is the Plaintiff.

fraud against the federal government to sue for the government to recover the fraudulently obtained funds. 31 U.S.C. § 3730(b). The FCA grants a bounty to a successful relator that can range up to 30% of the damages recovered by the government to encourage the exposure of fraud. *Id.* at § 3730(d). The government has the option in a *qui tam* action to step into the place of the relator and to sue in its own right. *Id.* at § 3730(b). Moreover, the government is entitled to treble damages if a violation of the FCA can be proven by the relator or the government. *Id.* at § 3729(a).

The United States refused to replace the Relator as allowed by section 3730. Instead, the United States filed an Amicus Curiae Brief arguing that an Inspector General (IG) employee lacks standing to bring a *qui tam* action based on information gathered during the performance of his duties.

Other courts have recounted in detail in history of *qui tam* actions. *See, e.g., U.S. v. X. Quinn,* 14 F.3d 645, 649–51 (D.C.Cir. 1994). It is sufficient for this analysis to note that the *qui tam* statute has gone through several different changes between the time it was first drafted in 1863 and the present. During this period, Congress has sought to prevent fraud against the government by empowering citizens to act as private attorneys general using *qui tam* actions. Congress has attempted to design the FCA to balance the creation of incentives for whistle-blowing insiders to come forward with information on fraud against the discouragement of plaintiffs who have no independent knowledge of fraud. *See id.* at 649. The present jurisdictional requirement in section 3730 of the FCA represents Congress' most recent attempt to strike this balance.

In its current form, the FCA limits the courts' jurisdiction over four matters. 31 U.S.C. § 3730(e). First, the courts lack jurisdiction over actions brought by former or present members of the armed forces. *Id.* at § 3730(e)(1). Second, the courts may not exercise jurisdiction over actions brought against members of Congress, the judiciary or the upper levels of the executive branch. *Id.* at § 3730(e)(2). Third, the courts are precluded from presiding over matters that

are already the subject of a civil suit in which the United States is a party. *Id.* at § 3730(e)(3). Finally, the courts lack jurisdiction over actions:

> ... based upon the public disclosure of allegations or transaction in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

*Id.* at § 3730(e)(3), (4)(A). An "original source" is:

> ... an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section that is based on the information.

*Id.* at § 3730(e)(3), (4)(B).

### Converting to Motion for Summary Judgment

The Defendant moved to dismiss the Relator's claims pursuant to Section 12(b) of the Federal Rules of Civil Procedure without specifying the applicable subsection. The jurisdictional aspects of the Defendant's motion appear to require the application of Rule 12(b)(1), and generally, a court cannot convert a 12(b)(1) motion to a Rule 56 motion for summary judgment. *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.1987). However, if the jurisdictional requirement is based upon the same statute that provides for the substantive claim, then the jurisdictional issues are properly decided under Rules 12(b)(6) and 56. *Id.,* and *see Redmon v. U.S.,* 934 F.2d 1151, 1155 (10th Cir.1991). Here, the same section of the FCA that provides for *qui tam* actions sets out the jurisdictional requirements. Because I have relied on the affidavits and other material submitted by both parties, I convert the 12(b)(6) motion to one for summary judgment.

## IG EMPLOYEES ARE BARRED FROM BRINGING *QUI TAM* ACTIONS

■ It is well settled that government employees *generally* can bring *qui tam* actions based on information acquired during the performance of their duties as long as they satisfy jurisdictional requirements. *See, e.g., United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1501 (11th Cir.1991). As pointed out by Mr. Fine, Congress has not expressly prohibited IG employees from bringing *qui tam* actions. Nonetheless, I construe the FCA to prohibit IG employees from filing *qui tam* actions. Without this bar, the availability of these FCA actions will undermine the intended effectiveness of the IGA.

■ Congress intended both the FCA and the IGA to strengthen the government's anti-fraud measures, but designed them to uncover fraud in different ways. Congress intended the FCA to encourage individual citizens with knowledge of fraud to divulge the information. On the other hand, Congress designed the IGA to provide a governmental agency with not only independent authority but with civil and criminal investigative powers to use in pursuing fraud.

The primary mission of the offices of Inspectors General is to prevent, deter and identify fraud, abuse and waste in government operations and programs. 5 U.S.C. app. § 2(2)(B). Congress' intent was to create an investigative body that would be free of conflicts and competing interests and thus could effectively investigate fraud. *See* S.Rep. No. 1071, 95th Cong.2d Sess., 6–7 (1978). When Congress passed this statute it was concerned about:

> ... government inefficiency, [and thus] created offices of Inspector General in a number of departments and agencies. The Report of the Senate Committee on Governmental Affairs on the legislation referred to "evidence [that] makes it clear that fraud, abuse and waste in the operations of Federal departments and agencies and in federally funded programs are reaching epidemic proportions." The Committee blamed these failures in large part on deficiencies in the organization and incentives of executive branch auditors and

investigators. The Inspectors General were, therefore, to provide interagency cohesion and a sense of mission in the struggle against waste and mismanagement as well as to further important communication between agencies: "[T]his type of coordination and leadership strengthens cooperation between the agency and the Department of Justice in investigating and prosecuting fraud cases."

*U.S. v. Aero Mayflower Transit Co.,* 831 F.2d 1142, 1144–45 (D.C.Cir.1987).

On the other hand, the FCA encourages individuals to step forward with information on fraud by providing potentially substantial bounties if the United States prevails in a *qui tam* action. Under the FCA, a relator can recover up to 90% of the actual damages done to the government because the government can receive trebled damages. *See* 31 U.S.C. §§ 3729(a) and 3730(d). When drafting the IGA, Congress surely did not anticipate the incentives created by the bounties established in the later-amended version of the FCA. Clearly these incentives create conflicts of interest from which Congress was trying to insulate IG employees.

IG employees are charged with strictly protecting the government's interest in deterring fraud. Yet, the availability of FCA bounties could foster a potential for self-dealing, diminished loyalty to the Federal Government, and the pursuit of fraud through private means rather than the procedures set out in the IGA. IG employees could opt to use their investigatory powers to gather information for their own benefit by strengthening a potential *qui tam* claim. In such a case, the IG employee might refrain from revealing instances of fraud until it would be more lucrative to bring a *qui tam* action. Allowing IG employees to bring *qui tam* actions could thus undermine the independence of the IG office and create actual, not merely potential, conflicts of interest for its employees.

■ Courts must read potentially conflicting statutes in a way that gives meaning to each statute. *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). A Court cannot choose to give effect

to one statute over another, and is required "absent a clearly expressed Congressional intention to the contrary to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). A court must interpret a statute consistently with the body of law of which it is a part because this is "a compatibility which by benign fiction we assume Congress always has in mind." *Green v. Bock Laundry Machine Company,* 490 U.S. 504, 528, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring).

The Relator asserts that Congress considered the conflict between the FCA and the IGA because Congress intended the two statutes to be complimentary and to prevent fraud through the coordination of government and the public efforts. I find no indication that Congress intended to undermine the effectiveness of the IGA when it passed the FCA. The Relator's construction of the statutes would have precisely that effect.

Considering these principles of statutory construction, and to uphold Congress' purposes and intentions as expressed in both the FCA and the IGA, I find that IG employees are barred from bringing *qui tam* actions under the FCA based on information discovered within the scope of their employment with that agency. To find otherwise and permit Mr. Fine to bring the present action would defeat the harmonious integration of the two statutes. Because there is no dispute on any of the material facts regarding this issue, I hold as a matter of law that the Defendant is entitled to summary judgment on this basis.

## THE COURT HAS NO JURISDICTION OVER THIS MATTER

I further find a second ground on which to grant the Defendant's Motion for Summary Judgment. I hold that the Relator failed to satisfy the public disclosure/original source jurisdictional requirement in the FCA.

▇ The Court must presume that jurisdiction does not exist in a *qui tam* action without a contrary showing by the Relator because federal courts are courts of limited jurisdiction. *U.S. ex rel. Precision Co. v.*

*Koch Industries,* 971 F.2d 548, 551 (10th Cir.1992). Thus, the Relator must show: (1) that his Complaint was not based upon the public disclosure of allegations contained in an administrative report or investigation; but, if the Complaint was based on such a disclosure, then (2) the Relator must show that he was the original source of the information serving as the basis of the allegations. 31 U.S.C. § 3730(e)(3), (4)(A & B).

### 1) Public Disclosures

The FCA does not define a "public disclosure," and the Tenth Circuit has also provided only limited help on the meaning of this term. Thus, I look to other Circuits and adopt the Second Circuit's definition. The Second Circuit held that a public disclosure occurs when "allegations of fraud are revealed to members of the public with no prior knowledge thereof." *U.S. ex rel. Doe v. John Doe Corp.,* 960 F.2d 318, 323 (2nd Cir.1992). The allegations need not be widely distributed but they must be irretrievably released into the public domain to people with no obligation to keep the information confidential. *Id.* Under this definition, the government need not affirmatively release the information to the public to result in a public disclosure. Instead, the court must decide whether the allegations of fraud were revealed to at least one member of the public who had no obligation to keep the matter confidential.

I will next consider each of Mr. Fine's disclosures to decide whether they are public disclosures within the meaning of the FCA. I will also decide whether the availability of the IG audit reports to the public through the Freedom of Information Act (FOIA) constitutes a public disclosure.

### a) Mr. Fine publicly disclosed the allegations when he sent the April 20 memorandum and March 20 letter to Donald Sikora.

Mr. Fine gave a memorandum and a letter dated April 9, 1990 and March 20, 1990 respectively to Donald Sikora. The April 9 memorandum contained a description of the specific costs questioned in the audit report generated by the IG/DOE and Mr. Fine. The allegations in this memorandum cover

the same areas of improperly claimed costs described in the Complaint. While the memorandum is not as specific as the Complaint, both documents describe the same costs, such as: bid and proposal costs, travel costs, entertainment costs, membership fees, political contributions, costs of trade show booths, sponsorship fees, costs for color brochures and tax preparation.

For a public disclosure, the allegations in the April 9 memorandum need not be identical to the allegations in the Complaint. Rather, the allegations in the Complaint need only be "based upon" the publicly disclosed allegations. *U.S. ex rel. Precision Co. v. Koch Industries,* 971 F.2d 548, 552 (10th Cir.1992). "Based upon" should be understood to mean "supported by," and thus *qui tam* actions even partially supported by publicly disclosed allegations are "based upon" those allegations within the meaning of the FCA. *Id.* Here, the April 9 memorandum and the Complaint both allege that ASI improperly claimed certain costs. That similarity is sufficient to conclude that the allegations in the memorandum support the allegations in the Complaint. Therefore, I find that Mr. Fine's Complaint is based on the April 9 memorandum.

The March 20 letter is less specific than the April 9 memorandum. Nonetheless, I find that the allegations in the letter support Mr. Fine's Complaint. Mr. Fine states in his letter that IG/DOE audits reveal that ASI claimed reimbursement under its contracts for unallowable costs. This general allegation is at the heart of his Complaint against ASI. Thus, I find that sufficient identity exists between the allegations in the letter and Mr. Fine's Complaint for the Complaint to be based on the March 20 letter.

By releasing the April 9 memorandum and the March 20 letter to Mr. Sikora, Mr. Fine publicly disclosed the allegations. Mr. Sikora was a member of the public and had no prior knowledge of the fraud and apparently had no obligation to keep the information confidential. Thus, under the Second Circuit's definition, releasing the allegations to Mr. Sikora qualifies as a public disclosure.

Mr. Fine argues that he released the information to Mr. Sikora in 1991 for assistance in determining whether the Department of Energy (DOE) discriminated against Mr. Fine because of his age. At that time, Mr. Sikora was a "volunteer leader" of the American Association of Retired Persons for New Mexico. Subsequently, in 1992, Mr. Fine designated Mr. Sikora to be his representative in the DOE's administrative proceedings on Mr. Fine's discrimination claim. However, Mr. Fine's point is irrelevant, because he fails to create an issue of fact regarding whether the release of the allegations to Mr. Sikora qualifies as a public disclosure.

**b) Mr. Fine did not publicly disclose the allegations when he sent the March 20 letter to Richard Kaheny.**

Mr. Fine originally wrote the March 20 letter to Mr. Kaheny who was the Director of Contracting for the Army at the White Sands Missile Range. As I discussed above, Mr. Fine's Complaint is based on the letter.

■ However, I find that Mr. Kaheny's receipt of this letter was not a public disclosure. Mr. Kaheny was a federal official when he received the letter. A public disclosure does not occur when an official of the federal government informs another federal official of allegations of fraud. *See U.S. ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1419 (9th Cir.1991). Nowhere does it appear in section 3730 that Congress intended a public disclosure to occur every time one government official discussed allegations of fraud with another official.

**c) Mr. Fine publicly disclosed the allegations when he sent the March 20 letter to Mr. Mazer.**

Mr. Fine offers no evidence to create an issue of material fact regarding the Defendant's contentions about Mr. Mazer. Therefore, I accept the facts as stated by the Defendant as uncontroverted. *See Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.1992). Mr. Mazer worked for a private accounting firm. His firm was not under contract with the government at the time that Mr. Fine solicited Mr. Mazer's opinion regarding the conclusions of the March 20 letter. Mr. Mazer had no

independent knowledge of the allegations because he was not employed by his accounting firm when it conducted the ASI audit that is the subject of the March 20 letter. Thus, as a matter of law, the release of the letter to Mr. Mazer was a public disclosure because he was a member of the public, had no prior knowledge of the fraud and had no obligation to keep the disclosure confidential.

### d) Mr. Fine did not publicly disclose the allegations when his attorney sent the letter to Senator Pryor.

Counsel for Mr. Fine sent a letter to Senator Pryor that, among other things, specifically mentioned ASI and its "numerous false or unjust enrichment claims for reimbursement." Based on *U.S. ex rel. Precision Co.*, this allegation is sufficient to serve as the basis for the public disclosure of the allegations in Mr. Fine's Complaint. However, Senator Pryor and his staff, like Mr. Kaheny, are government officials and revealing the allegations to them does not qualify as a public disclosure.

### e) The allegations were not publicly disclosed because they were potentially available to the public.

The Defendant argues that the statements in IG/DOE's audit reports regarding ASI are potentially accessible to the public through the Freedom of Information Act (FOIA) and thus have been publicly disclosed. To support this proposition, the Defendant cites to Circuit decisions that the potential accessibility of discovery material to the public renders the material publicly disclosed within the meaning of section 3730. *U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1158 (2nd Cir.1993) *and U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1158 (3rd Cir.1991). However, Mr. Fine has presented evidence that raises an issue of fact as to whether the audit report would have been accessible through FOIA. *See* Fine Affidavit and Deposition of William Costello, pp. 100–101, attached to Memorandum in Opposition to Defendant's Motion to Dismiss, Exhibit 5. Thus, summary judgment on this issue is improper.

### f) The allegations in Mr. Fine's Complaint were contained in an administrative report.

The FCA requires for a public disclosure that "congressional, administrative, or Government Accounting Office report, hearing audit or investigation" contain the allegations that have been revealed and on which a Complaint is based. 31 U.S.C. § 3730(e)(4)(A). Here, IG audit reports on ASI contained the allegations at issue. While Mr. Fine never released those audits, he revealed some of the allegations contained in the audits. Thus, that part of the definition of a public disclosure is also satisfied.

### 2) Original Source

A public disclosure will not bar a *qui tam* action if the relator is the "original source" of the allegations on which the Complaint is based. 31 U.S.C. § 3730(e)(4)(A). The FCA defines an "original source" as having "direct and independent knowledge of the information on which the allegations are based and have voluntarily provided the information to the Government before filing an action." *Id.* at § 3730(e)(4)(B). Some courts have construed the FCA to also require that the relator be the source of the information to the entity that disclosed the allegations. *Chen–Cheng Wang ex rel. v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir.1992); *U.S. ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2nd Cir.1990); *and U.S. ex rel. Fine v. Sandia Corp.*, Civ. No. 92–0354 JP/JHG, slip op. at 17 (D.N.M. April 22, 1994); *contra U.S. ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1351–55 (4th Cir.1994). However, I need not decide whether to apply this additional requirement because Mr. Fine did not have direct and independent knowledge of the information in his Complaint.

Mr. Fine discovered the information that underlies his Complaint within the scope of his duties as an Inspector General. As a government auditor, his duties included collecting and analyzing the information produced through audits conducted by others. He used the information from those audits as the basis for his Complaint and had only second hand information on which to base his allegations. Thus, Mr. Fine was not the

original source of the allegations. *U.S. ex rel. Fine v. Sandia Corp.*, at 18–19, *and see U.S. ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir.1990).

In conclusion, the Defendant's Motion for Summary Judgment is appropriate on both grounds. First, IG employees are barred from bringing *qui tam* actions. Second, the Court lacks subject matter jurisdiction over this matter. An order in accordance with this opinion shall be entered.