**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 11/6/96**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,
*ex rel*., HAROLD R. FINE,

      Plaintiff-Appellant,

v.

                          No. 95-2014

ADVANCED SCIENCES, INC., a
New Mexico corporation,

      Defendant-Appellee.

UNITED STATES OF AMERICA,

      Amicus Curiae.

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-91-794-JC)

Maureen A. Sanders, Albuquerque, New Mexico (Duff H. Westbrook of Duff H. Westbrook, P.C., Albquerque, New Mexico, with her on the brief) for Plaintiff-Appellant.

Pamela J. Mazza (Andrew P. Hallowell and Philip M. Dearborn with her on the brief), of Piliero, Mazza & Pargament, Washington, D.C., for Defendant-Appellee.

Michael F. Hertz (Barbara C. Biddle, Joan E. Hartman, and Dara A. Corrigan with him on the brief), Attorneys, Civil Division, U.S. Department of Justice, Washington, D.C., for *Amicus Curiae*.

---

Before **HENRY**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

This case involves a *qui tam* action brought under the False Claims Act, 31 U.S.C. §§ 3729-33, by Harold R. Fine. Fine, the relator, is a former employee of the Office of the Inspector General at the U.S. Department of Energy. He brought suit against Advanced Sciences, Incorporated ("Advanced Sciences"), a federal contractor performing work for several federal agencies. Fine alleges that Advanced Sciences engaged in a pattern of submitting claims for reimbursement of unallowable costs incurred under a variety of its federal contracts. He alleges that Advanced Sciences submitted false and fraudulent claims with respect to eighteen specific matters in its federal contracts. Under the *qui tam* provisions of the False Claims Act, Fine seeks recovery on behalf of the United States as well as a *qui tam* reward for himself. *See id*. § 3730(d).

The question presented here is whether a "public disclosure," as defined by the False Claims Act, has occurred, which would require Fine to qualify as an "original source" in order to bring suit. We hold that Fine's suit is

jurisdictionally barred because it is based upon a public disclosure and he does not qualify as an original source.

## I. BACKGROUND

Harold R. Fine is a former employee of the Office of the Inspector General, Western Region, in the U.S. Department of Energy. Fine was based at the Office of the Inspector General in Albuquerque, New Mexico. At the time of his resignation in 1991, he was an Assistant Regional Manager in charge of financial-related audits. Fine's responsibilities in this position included the supervision of field auditors in their performance of audits and preparation of audit reports.

In order to perform these audits, the Office of the Inspector General may use its own auditors or it may contract with independent accounting firms. These audits generally seek to determine whether costs submitted on federal projects are allowable or reimbursable under the Federal Acquisition Regulations. After concluding a field audit, the Office of the Inspector General writes an audit report, which management then reviews. The Office of the Inspector General then sends the audit report to the contracting officer at the federal project involved in the audit. This contracting officer eventually makes the final decision on whether to make payment on submitted costs.

Advanced Sciences is a contractor providing environmental engineering and other services. Since 1985, Advanced Sciences has had numerous contracts with

the Department of Energy and other federal agencies. The allegations in this case concern developments at the U.S. Army White Sands Missile Range in New Mexico.

In early 1990, the Director of Contracting at White Sands, Richard Kaheny, was considering Advanced Sciences to perform environmental work at the site. Before awarding the contract, Kaheny requested a field audit of Advanced Sciences' accounting systems by the Department of Energy's Albuquerque office. On the day of the audit request, February 6, 1990, Fine called Kaheny and informed him that there were going to be problems with the audit because of ongoing investigations of Advanced Sciences by the Department of Energy.

From that time, Kaheny had almost daily contact with Fine concerning the audit request. In response to Kaheny's request, Fine prepared and sent to Kaheny a letter dated March 20, 1990. The letter concluded that because of the range of unallowable costs submitted by Advanced Sciences on its federal contracts during fiscal year 1988, neither its internal control structure nor its financial accounting system was adequate to identify and account for unallowable costs. Believing this to be the official Department of Energy and Office of the Inspector General position, Kaheny did not award the contract for the environmental work at White Sands to Advanced Sciences.

Fine based the conclusions contained in his March 20 letter on information he gleaned from reviewing the audit reports of Advanced Sciences prepared by field auditors of the Department of Energy. In particular, a recent Office of the Inspector General's audit of Advanced Sciences suggested to Fine that Advanced Sciences was submitting false claims. Fine alleges this audit of Advanced Sciences' claimed indirect expense rates for 1988 was under his direct supervision

Subsequently, on April 9, 1990, Fine prepared a memorandum alleging that Advanced Sciences' submission of a series of costs that were later questioned in an audit as "unallowable" were in fact "false claims" because of the continuing nature of the practices. Fine sent this memorandum to the Investigations Division of the Office of the Inspector General and requested that an investigation of Advanced Sciences be conducted.

Fine's March 20 letter to White Sands contracting officer Kaheny was unauthorized and undertaken without the approval of his supervisor. As a result, the Office of the Inspector General retracted the letter and relations between Fine and management soured. Over the next year, Fine leveled various charges, not relevant here, against the Office of the Inspector General including allegations of age discrimination and retaliation. During the course of pursuing these charges, Fine met with Donald Sikora of the American Association of Retired Persons, Fine's designated representative for his age discrimination case. On one

occasion, he gave Sikora both the March 20 letter and April 9 memorandum. In addition, under a cover letter dated September 29, 1990, Fine sent his March 20 letter to Burt Mazer, an employee of Birnbaum & Associates, an accounting firm. Fine sent this letter for the purpose of soliciting Mazer's opinion on the reasonableness of his sending the March 20 letter to Kaheny at White Sands.

In July 1991, Fine resigned from the Office of the Inspector General. Less than a month later, he filed his *qui tam* Complaint in this action in the United States District Court for the District of New Mexico. Fine states that the allegations in his Complaint were based upon information gathered in the Office of the Inspector General's audit of Advanced Sciences' 1988 indirect expense rates. He also maintains that he based his Complaint on information provided to him by an anonymous source after Fine left government service.

In his Complaint, Fine alleges that Advanced Sciences submitted false claims in violation of the False Claims Act, 31 U.S.C. §§ 3729-33. He alleges that Advanced Sciences submitted claims for reimbursement of unallowable costs with respect to eighteen different matters, under various of its federal contracts between 1985 and 1991. Fine filed the Complaint under seal and served a copy on the U.S. Department of Justice, as required by 31 U.S.C. § 3730(b)(2). Nine months later, the Department of Justice notified the district court that it declined to intervene in the case and Fine proceeded as the *qui tam* relator.

Advanced Sciences filed a motion to dismiss. It argued that the court lacked subject matter jurisdiction under 31 U.S.C. § 3730(e)(4) because Fine's Complaint was based upon publicly disclosed allegations and Fine was not an original source of those allegations.

The district court converted Advanced Sciences' motion to dismiss to a motion for summary judgment and granted summary judgment against Fine as to all claims. *United States ex rel. Fine v. Advanced Sciences, Inc.*, 879 F. Supp. 1092, 1093, 1099 (D.N.M. 1995). The court ultimately held Fine's suit was jurisdictionally barred because it was based upon publicly disclosed allegations and Fine did not qualify as an original source. *Id*. at 1096-98.

The district court determined Fine had made two public disclosures of the allegations upon which his Complaint was based: once when Fine gave both his March 20 letter and his April 9 memorandum to Sikora of the American Association of Retired Persons and again when he gave his March 20 letter to Mazer of Birnbaum & Associates. *Id*. It also held Fine did not qualify as an original source under 31 U.S.C. § 3730(e)(4)(B) because, as a government auditor who collected and analyzed information produced by others, he did not have direct and independent knowledge of the information in his Complaint. *Id*. at 1098. The district court concluded it lacked subject matter jurisdiction over Fine's *qui tam* action and dismissed the suit in its entirety. *Id*. at 1099.

This appeal followed; we have jurisdiction pursuant to 28 U.S.C. § 1291. On appeal, Fine presents the following issues: (1) whether his disclosures to Sikora or Mazer were "public disclosures" under the provisions of 31 U.S.C. § 3730(e)(4)(A); and, if so, (2) whether Fine qualifies as an original source of the allegations forming the basis of his Complaint under section 3730(e)(4)(B).[1]

## II. ANALYSIS

Satisfaction of the provisions of 31 U.S.C. § 3730(e)(4) is a question of subject matter jurisdiction. The district court properly converted Advanced Sciences' motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56. *United States ex rel. Ramseyer v. United Healthcare Corp.*, No. 94-6299, 1996 WL 412819, at *3 (10th Cir. July 24, 1996). This court reviews the grant of summary judgment *de novo*, applying the same legal standard the district court would under Rule 56(c). *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, — U.S. —, 115 S. Ct. 655 (1994). The determination of subject matter jurisdiction is also reviewed *de novo*. *United*

---

[1]The district court also granted summary judgment against Fine on the basis of an implied jurisdictional bar against *qui tam* suits by employees of the Office of the Inspector General. Fine appeals this holding. In opposition, the United States of America joins Advanced Sciences as *amicus curiae* on this issue by submitting a brief and participating in oral argument. Because we hold Fine's suit is barred under the jurisdictional provisions of the False Claims Act, 31 U.S.C. § 3730(e)(4), this court specifically does not address the district court's ruling that there is an implied bar.

*States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir.

1992), *cert. denied*, 507 U.S. 951 (1993).

Federal courts are courts of limited jurisdiction.  Jurisdiction is thus

presumed not to exist absent proof by the party asserting jurisdiction.  *Precision*,

971 F.2d at 551; *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521

(10th Cir. 1991).  Here, Fine invokes federal jurisdiction and he has the burden of

alleging facts essential to show jurisdiction under the False Claims Act as well as

supporting those allegations by competent proof.  *See Precision*, 971 F.2d at 551.

The False Claims Act imposes jurisdictional requirements for private *qui*

*tam* suits.  In 1986, Congress amended the False Claims Act to bolster its

effectiveness as an antifraud measure.  To this end, Congress sought to increase

private enforcement of the False Claims Act by encouraging insiders with

information of fraud to come forward.  *United States ex rel. Fine v. Sandia Corp.*,

70 F.3d 568, 571 (10th Cir. 1995).  Among the changes, Congress amended the

*qui tam* provisions to bar all *qui tam* actions that are

> based upon the public disclosure of allegations or
> transactions in a criminal, civil, or administrative
> hearing, in a congressional, administrative, or
> Government Accounting Office report, hearing, audit, or
> investigation, or from the news media, unless . . . the
> person bringing the action is an original source of the
> information.

31 U.S.C. § 3730(e)(4)(A).

The preliminary question is whether Fine's Complaint is "based upon" a "public disclosure" within the meaning of 31 U.S.C. § 3730(e)(4)(A). The language of section 3730(e)(4)(A) makes it clear that at the summary judgment stage this inquiry involves four separate questions: (1) whether the alleged "public disclosure" contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made "public" within the meaning of the False Claims Act; (3) whether the relator's complaint is "based upon" this "public disclosure"; and, if so, (4) whether the relator qualifies as an "original source" under section 3730(e)(4)(B). *United States ex rel. Fine v. MK-Ferguson Co.*, Nos. 95-2011, 95-2021, slip op. at 13 (10th Cir. ___ 1996).

A court must address the purported public disclosure before analyzing whether the relator is an original source. If the answer to any of the first three questions is "no," the inquiry is complete and section 3730(e)(4) does not bar the relator's complaint. But if each of the first three questions is answered "yes," then the court must consider whether the relator qualifies as an "original source" under section 3730(e)(4)(B). *See Precision*, 971 F.2d at 552 & n.2.

A. "Public Disclosure"

The initial question for this court is whether the alleged public disclosures here contain allegations or transactions which are subject to the jurisdictional bar. Fine argues that in order to trigger the bar, the disclosure must be made during or

in one of the specified congressional or administrative hearings, audits, reports, or investigations. Fine thus contends that any public repetition of the contents or substance of the hearing, audit, report, or investigation will not suffice as a "public disclosure." Recently, however, this court rejected the argument that the disclosure itself must be through one of the listed sources in section 3730(e)(4)(A). Instead, in order for the jurisdictional bar to apply, the allegations of fraud or fraudulent transactions must be contained in one of the forms, or be available from one of the sources, listed in section 3730(e)(4)(A). *See Ramseyer*, No. 94-6299, 1996 WL 412819, at *5-*6; *see also Sandia*, 70 F.3d at 571 (holding section 3730(e)(4)(A) defines the types of disclosures, which concern the allegations and transactions, that trigger the jurisdictional bar). That section defines the *sources* of allegations and transactions which trigger the bar but it does not define the only *means* by which public disclosure can occur.

The district court held that Fine's disclosure of his March 20 letter and April 9 memorandum to Sikora and his disclosure of the March 20 letter to Mazer served to trigger the jurisdictional bar. Both of these documents specifically reference the Office of the Inspector General's audit of Advanced Sciences' indirect expense rates for 1988. The audit does not use the term "fraud." It nevertheless lists claimed costs and then compares these claims with "allowable" or "necessary" costs to reveal "questioned" costs.

In *MK-Ferguson*, this court determined that the relator's first application of the term "false claims" as a mere characterization is immaterial to the issue of the public disclosure. *MK-Ferguson*, Nos. 95-2011, 95-2021, slip op. at 22-23. Similarly, the question of whether the administrative audit contains the allegations or transactions which would trigger the bar is not determined by the use of the precise words "allegations" or "transactions." The audit in question here does not use the term "allegations." It does, however, present Advanced Sciences' claimed indirect costs in a questioning light. Under this court's holding in *MK-Ferguson*, that presentation is sufficient to constitute allegations or transactions for purposes of 31 U.S.C. § 3730(e)(4)(A). *Id.*

The succeeding question is whether Fine's letter or memorandum represented the allegations or transactions contained in the Office of the Inspector General's audit. We need only compare the contents of the April 9 memorandum with the specifics of the audit of Advanced Sciences' 1988 indirect expense rates. The April 9 memorandum lists a number of "unallowable costs," among them: (1) a difference of $185,084 between actual bid and proposal costs and the maximum allowable costs; (2) travel costs of $11,075, including costs for personal use of company vehicles not supported by the Federal Travel Regulations; (3) $10,459 in fees and memberships, which include political contributions or donations; and (4) $4326 in professional service costs, including fees for marketing materials.

-12-

Each of these amounts is described and either contained in or derivable from the audit. As a result, the alleged public disclosure, Fine's April 9 memorandum, contains allegations and transactions set out in the audit and thus triggers the jurisdictional bar.[2]

The next question is whether the alleged disclosure has been made public. In *Ramseyer*, this court held that public disclosure occurs when the allegations of fraud or fraudulent transactions upon which the *qui tam* suit is based are affirmatively disclosed to members of the public who are otherwise strangers to the fraud. No. 94-6299, 1996 WL 412819, at *5. The court held that "public disclosure occurs only when the allegations or fraudulent transactions are affirmatively provided to others not previously informed thereof." *Id.*

Fine gave his April 9 memorandum to Sikora, an individual who is not affiliated with either the Office of the Inspector General or Advanced Sciences. Sikora was therefore previously unconnected with the alleged fraud. Fine has pointed to no facts indicating that Sikora otherwise had some involvement with the alleged fraud through other means independent of Fine's disclosure to him. Fine makes no argument that the disclosure was somehow inadvertent or passive

---

[2]As a result of this holding, we need not resolve whether Fine's March 20 letter contained the allegations or transactions of the Office of the Inspector General's audit and whether his giving it to Mazer of Birnbaum & Associates and Sikora constituted a public disclosure.

but readily admits to providing the memorandum to Sikora. Thus, on the basis of *Ramseyer*, this court is compelled to conclude that Fine affirmatively released the allegations of fraud and fraudulent transactions into the public domain when he gave his April 9 memorandum to Sikora. *Id.*

Fine, however, makes two arguments for the proposition that he did not publicly disclose the allegations. First, he maintains that the False Claims Act requires a court to determine whether the disclosure is reasonably likely to bring the allegations to light and that his disclosure was not sufficiently public to qualify. In *Precision*, this court determined that a reviewing court should not evaluate the quality and quantity of information in the public domain as part of its jurisdictional inquiry. 971 F.2d at 553. Fine's reading would have a court perform the sort of inquiry prohibited by *Precision*. Second, Fine argues that his disclosure to Sikora did not make the allegations available to the general public. Fine's semantic distinction is without merit. Regardless of the number of people his disclosure may have reached, he disclosed the allegations to a member of the general public: one who was previously unconnected with the alleged fraud. Under *Ramseyer* this is sufficient. No. 94-6299, 1996 WL 412819, at *5. As *Precision* cautions, the jurisdictional inquiry is not to determine how many people were informed of the alleged fraud by the disclosure. 971 F.2d at 553. The proper inquiry is more limited: whether the disclosure of the allegations to any

-14-

member of the public not previously informed thereof has occurred. We conclude that it has.[3]

Our conclusion leads directly to the next inquiry: whether Fine's Complaint is based upon this public disclosure. In *Precision*, this court determined that "based upon" in 31 U.S.C. § 3730(e)(4)(A) means "supported by." 971 F.2d at 552. The court must determine whether "substantial identity" exists between the publicly disclosed allegations or transactions and the *qui tam* complaint. *Id.* at 553. Moreover, the False Claims Act bars any *qui tam* action that is even partly based upon the publicly disclosed allegations or transactions. *Id.* at 552.

We thus compare the publicly disclosed April 9 memorandum with the allegations contained in Fine's Complaint. *MK-Ferguson*, Nos. 95-2011, 95-2021, slip op. at 17. While his Complaint does not list specific dollar amounts, Fine alleges Advanced Sciences made false claims for fees associated with lobbying and political activities; for bid and proposal costs in excess of maximum allowable amounts; for costs of private use of vehicles and other travel expenses; for costs related to club memberships; and for professional service fees related to marketing and advertising.

---

[3]We need not address public disclosure in a privileged setting, such as that of attorney and client.

Fine admits that the costs specified in his April 9 memorandum provided the basis for the allegations in four paragraphs of his Complaint. Fine also stated in response to interrogatories that his knowledge about the practices of Advanced Sciences came in part from the work papers of the audit. The April 9 memorandum and the Complaint on their face and Fine's own admissions confirm that there is substantial identity between the "unallowable costs" in Fine's April 9 memorandum and the "false claims" he alleges in his Complaint. We thus conclude that Fine's Complaint is based upon a public disclosure within the meaning of 31 U.S.C. 3730(e)(4)(A).[4]

## B. "Original Source"

Having resolved that Fine's Complaint is based upon publicly disclosed allegations or transactions under 31 U.S.C. § 3730(e)(4)(A), this court now considers whether Fine qualifies as an original source under 31 U.S.C. § 3730(e)(4)(B). Section 3730(e)(4)(B) provides that an original source is one who

---

[4]Fine makes several arguments regarding the construction of "based upon": (1) "based upon" means "derived from" and because his discovery of the alleged fraud occurred prior to the public disclosure, his Complaint cannot be based upon that later-occurring event; (2) his Complaint contains more specific allegations than the public disclosure and these more specific allegations of fraud should not be subject to the bar; and (3) the public disclosure does not identify the unallowable costs as "false claims" while his Complaint constitutes the first use of the statutory lexicon. Fine made these same arguments in another appeal of a *qui tam* action. We found them to be without merit, rejected them, and do so again here. *United States ex rel. Fine v. MK-Ferguson Co.*, Nos. 95-2011, 95-2021, slip op. at 19 (10th Cir. — 1996).

has "direct and independent knowledge of the information on which the allegations are based" and has "voluntarily provided" the information to the government prior to filing suit.

We had occasion to consider more fully the original source exception in *MK-Ferguson*. In that case as well, Fine was the relator and argued that he qualified as an original source because of his involvement in and supervision of the audit which uncovered the alleged fraud. This court construed the term "original source" and determined that direct knowledge is knowledge gained by the relator's own efforts and not acquired from the labors of others. *MK-Ferguson*, Nos. 95-2011, 95-2021, slip op. at 23-25 (citing cases). Moreover, to be independent, the relator's knowledge must not be derivative of the information of others, even if those others may qualify as original sources. *Id.* at 25. We held that Fine did not qualify as an original source because his knowledge was secondhand and derivative of the information generated by the auditors who actually performed the audit and uncovered the facts. *Id.*

Here, too, Fine argues that he is an original source because of his direction of the Office of the Inspector General's audit of Advanced Sciences' 1988 claimed indirect expense rates.[5] He further maintains that his investigation into

---

[5]In addition, Fine maintains he is an original source because of his participation in making the public disclosure. We found this argument to be without merit and rejected it in *MK-Ferguson*, Nos. 95-2011, 95-2021, slip op. at

the alleged fraud after he left government service qualifies him as an original source. But again, Fine's knowledge of the alleged fraud comes from the work of auditors under his supervision. Fine was not the individual who discovered the facts but he was the supervisor to whom the auditors reported. In relation to the alleged fraud, Fine stands in largely the same position here that he did in *MK-Ferguson*: he learned of it through the discoveries of others. In *MK-Ferguson*, we held this was not sufficient to satisfy the original source requirements and we reapply that holding here. *See id.*

Furthermore, Fine's "independent" investigation appears to consist of little more than some information provided to him by an anonymous source. While the depth or scope of any investigation is not determinative of whether it constitutes "direct and independent knowledge," the source or starting point of the investigation may be. In *Precision*, the court held investigations that are merely continuations of, or derived from, previous investigations are not sufficiently independent to satisfy the original source requirements. 971 F.2d at 554. If the previous investigation does not qualify the relator as an original source, then the derivative investigation also fails this qualification.

Fine further pursued information first learned from the work of auditors at the Office of the Inspector General. This latter investigation, a continuation of

_____

23 n.2. We reapply that holding here.

the first, does not qualify Fine as an original source. *MK-Ferguson*, Nos. 95-2011, 95-2021, slip op. at 25. Fine's knowledge is thus based on the work of others and is not direct and independent. He therefore cannot qualify as an original source. *Id.*[6]

### III. CONCLUSION

Fore the reasons set forth above, the district court's dismissal of the Complaint is AFFIRMED.

---

[6]Because Fine fails to satisfy the "direct and independent knowledge" element of the "original source" analysis, this court need not consider whether Fine "voluntarily provided" this information to the government as required under section 3730(e)(4)(B). *See United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 554 (10th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993).

**No. 95-2014, <u>United States ex rel. Fine v. Advanced Sciences, Inc.</u>**

**HENRY**, Circuit Judge, concurring.


I concur in the majority's result, but write separately to express my disagreement with the its analysis of part of the public disclosure issue and to voice my concern with the expansive interpretation of "based upon" to which our circuit has bound itself in <u>United States ex rel. Precision Co. v. Koch Indus.</u>, 971 F.2d 548 (10th Cir. 1992), <u>cert. denied</u>, 507 U.S. 951 (1993).

First, the majority holds that the disclosure of the April 9 memorandum by Mr. Fine to Donald Sikora of the American Association of Retired Persons was a "public disclosure." Slip Op. at 14. This disclosure was made in the context of Mr. Sikora's representation of Mr. Fine during an age discrimination case that Mr. Fine brought against the Department of Energy. The majority cites <u>Precision</u> for the proposition that "a reviewing court should not evaluate the quality and quantity of information in the public domain as part of its jurisdictional inquiry." <u>Id.</u> (citing <u>Precision</u>, 971 F.2d at 553). Although I agree that the court should not attempt such an inquiry, the stated proposition presupposes that the information is in the "public domain." Here, the April 9 memorandum was only given to Mr. Sikora in the context of Mr. Sikora's representation of Mr. Fine during an age discrimination proceeding; Mr. Sikora appears to have been, in legal terms, an agent of Mr. Fine. Certainly, discussing a potential qui tam suit with one's

lawyer does not amount to a public disclosure. Similarly, an employee's discussion of allegations of fraud with his representative in an age discrimination case, when such allegations may have led to his discharge, cannot amount to a public disclosure.

I concur with the majority, however, based upon the disclosure of the March 20 letter to Mr. Burt Mazer of Birnbaum & Associates. This letter contained allegations that Advanced Sciences, Inc. had claimed unallowable costs and was widely disseminated to the public. Mr. Fine himself stated in deposition testimony that "God, I think, received a copy of it. This went all over the country." Aple's Br. at 15 n. 9 (citing Aplt's App. at 288). Unlike Mr. Sikora, Mr. Mazer clearly had no obligation to keep the allegations made in the March 20 letter secret. Mr. Sikora, as Mr. Fine's agent, could neither disclose to others nor use for his own benefit the information disclosed to him by Mr. Fine during the course of the representation. See Restatement (Second) of Agency § 387 (1958) ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."). Mr. Mazer, on the other hand, was under no fiduciary duty to Mr. Fine or the Department of Energy, when Mr. Fine sent him the March 20 letter seeking his opinion of the allegations contained therein. Thus, Mr. Fine's disclosure of the March 20 letter to Mr. Mazer, who was a stranger to the fraud and was under no

-2-

obligation to keep the letter secret, amounts to a public disclosure for the purpose of qui tam jurisdiction.

My second reason for writing separately is to express my concern with Precision's expansive definition of "based upon": "[a] qui tam action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." Precision, 971 F.2d at 552. I believe this definition overly restricts qui tam jurisdiction and substantially thwarts the important goal of qui tam suits to uncover fraud against the government. The District of Columbia Circuit writes:

> The remedial purposes of the [Fraud Claims Act] are inadequately served by an expansive interpretation of the jurisdictional bar that prevents *qui tam* suits when only innocuous or spotty information-- insufficient in itself to constitute an allegation of fraud or to reveal the essential elements of a fraudulent transaction--exist in the public domain. The goal of avoiding suits that merely drain the public fisc is amply advanced by a construction of [31 U.S.C.] § 3730(e)(4)(A) that bars suit only when specific allegations of fraud or the vital ingredients to a fraudulent transaction exist in the public eye.

See United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 657 (D.C. Cir. 1994) (emphasis added).

By creating such a "quick trigger" to the original source analysis, see id., Precision ignores the fact that much fraud is discovered at the management level where individuals receive information from many disparate sources and "put the puzzle together" to uncover the fraud. The "original sources" will often only see

-3-

small pieces of a large puzzle and hence, be unable to put it together.  See 31 U.S.C. § 3730(e)(4)(B) (restricting "original source" to individuals "who ha[ve] direct and independent knowledge of the information on which the allegations are based").

I do not suggest a strict "derived from" test where the qui tam complaint must derive solely from the publicly disclosed information, as such a scheme would lead to artful pleading as Precision suggests, see id.  I merely suggest the court determine whether the qui tam complaint logically follows from information in the public domain.  See I The Oxford English Dictionary 979 (2d ed. 1989) (defining "base" as "[t]o place *on* or *upon* a foundation or logical basis").  Thus, if a piece of information disclosed to a member of the public, supports the complaint, but would not in and of itself provide the logical basis for that person to make allegations similar to those in the complaint, qui tam jurisdiction should ensue.

However, as this court is bound by the definition of "based upon" given in Precision, I must concur in the result of this case.  I note that under my formulation, Mr. Fine's complaint is "based upon" the March 20 letter, which contained allegations that Advanced Sciences, Inc. had claimed unallowable costs.  These allegations form the basis of Mr. Fine's complaint.