UNITED STATES of America, ex rel., Mary C. McKENZIE; Mary C. McKenzie, Plaintiffs–Appellants,

v.

BELLSOUTH TELECOMMUNICATIONS, INC., doing business as South Central Bell Telephone Company, Defendant–Appellee.

No. 96–5268.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1997.

Decided Aug. 26, 1997.

Ronald J. Zuker (briefed), Vaughan &
Zuker, Knoxville, TN, William C. Buckhold
(argued and briefed), Leonard Egan
(briefed), Thomas A. Lorenzen, Fort &
Schlefer, Washington, DC, for Plaintiffs–Ap-
pellants.

Matthew H. Patton (argued and briefed),
Kilpatrick & Cody, Fred A. Walters, Bell-
South Telecommunications, Inc., Atlanta, GA,
Arthur G. Seymour, Jr., Frantz, McConnell
& Seymour, Knoxville, TN, for Defendant–
Appellee.

Before: NORRIS and MOORE, Circuit Judges, RUSSELL, District Judge.*

RUSSELL, D.J., delivered the opinion of the court, in which MOORE, J., joined. NORRIS, J. (p. 945), delivered a separate dissenting opinion.

RUSSELL, District Judge.

The plaintiff, Mary McKenzie, brought this qui tam action[1] under the False Claims Act ("FCA"), 31 U.S.C. § 3729–3733, for Bell-South Telecommunications, Inc.'s ("Bell-South") allegedly fraudulent activities against the United States government. McKenzie also asserted a claim on her own behalf under the FCA's whistleblower protection provision. The district court dismissed McKenzie's complaint for lack of subject matter jurisdiction under the FCA, which prohibits qui tam actions "based upon" public disclosures of fraud unless the relator is an "original source" of the information. We affirm in part and reverse in part.

## I.

McKenzie was an employee of BellSouth's subsidiary, South Central Bell, from December 1966 until March 1992 when she left work on permanent disability status. For most of her career at South Central Bell McKenzie was a dispatcher for the company's maintenance technicians. This position included receiving and processing complaints about telephone service, dispatching repair personnel, and closing these "trouble reports" once repairs were completed.

South Central Bell provides telephone service throughout Tennessee, Kentucky, Alabama, Mississippi, and Louisiana and its customers include the Tennessee Valley Authority and a Department of Energy facility at Oak Ridge, Tennessee, both federal facilities. When a telephone line is out of service for more than 24 hours, South Central Bell must refund the cost of that day's service for those customers who request a refund, except in the following circumstances: service is diminished but the line is not completely out of service; repairs are impossible because the customer's premises are inaccessible; the condition is reported by an employee and not the customer; and the customer extends the period of time for repairs to be completed.

According to McKenzie's complaint, South Central Bell, to avoid having to make refunds to the United States and other customers, falsified trouble reports so that it would appear that lines were repaired within 24 hours or that one of the exceptions applied. McKenzie says that she and other dispatchers routinely misclassified telephone lines as either in service or diminished service when the lines were actually out of service, reported that service had been restored within 24 hours when it had not been, reported that premises were inaccessible when they were not, and misclassified trouble reports as having been initiated by a South Central Bell employee when they were actually initiated by the customer.

McKenzie began complaining to her supervisors at South Central Bell about these practices in 1984 and continued to complain until she left her position on disability status. On one occasion McKenzie showed her supervisor a newspaper article describing a similar fraud being perpetrated in Florida. McKenzie claims that as a result of her complaints she was harassed and threatened with discharge. After suffering two emotional breakdowns a company psychiatrist placed McKenzie on permanent disability leave.

McKenzie filed suit under the FCA, which allows individuals with information regarding the commission of fraud against the United States to bring suit on the government's behalf.[2] McKenzie also brought a retaliation

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1. A qui tam action is one "brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act ..., part of the penalty to go to any person who brings such action and the remainder to the state or some other institution." BLACK'S LAW DICTIONARY 1251 (6th ed.1990).

2. The statute requires persons bringing a suit under its provisions ("relators") to submit the allegations under seal to the United States Attorney's office. The United States Attorney reviews the allegations and determines whether it would be in the government's interest to intervene in the suit. McKenzie complied with this requirement and the United States elected not to intervene.

claim on her own behalf under 31 U.S.C. § 3730(h).

## II.

 We review the district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction de novo. *Duncan v. Rolm Mil–Spec Computers,* 917 F.2d 261, 263 (6th Cir.1990). A motion to dismiss is properly granted only if it appears that the plaintiff can prove no set of facts which would entitle her to relief. All factual allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544 (6th Cir.1991). Federal courts are courts of limited jurisdiction. *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976). Therefore, the plaintiff bears the burden of establishing jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991).

## III.

The qui tam provision of the False Claims Act allows private citizens, acting on behalf of the government, to recover treble damages from anyone who has committed a fraud upon the government.[3] Any individual bringing such an action can receive up to 30% of the money recovered. 31 U.S.C. § 3730(d)(2). Congress has placed some jurisdictional limits on qui tam actions, however, in the interest of avoiding parasitic suits. *See United States* ex rel. *Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1347 (4th Cir.), *cert. denied,* 513 U.S. 928, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994). Specifically, the Act provides: "No court shall have jurisdiction over an action under this section *based upon* the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, ... or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the *original source* of the information." 31 U.S.C. § 3730(e)(4)(A) (emphasis added).

The original version of the FCA, enacted in 1863, allowed anyone to bring a qui tam action and receive 50 percent of the amount recovered. S. REP. NO. 345, 99th Cong., 2d Sess. 8–10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. This broad provision led to abuse and in 1943, following the Supreme Court's decision in *United States* ex rel. *Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), which held that a relator could bring a qui tam action even though the action was based entirely upon information contained in a government indictment, Congress amended the FCA. The 1943 version precluded actions "based on evidence or information the government had when the action was brought." *United States* ex rel. *Stinson v. Prudential Insurance Co.,* 944 F.2d 1149, 1153 (3d Cir.1991) (quoting 31 U.S.C. § 3730(b)(4) (1982) (superseded)). This led to claims being barred even in cases where the qui tam plaintiff supplied the information to the government before filing the claim. *See United States* ex rel. *Wisconsin v. Dean,* 729 F.2d 1100, 1106 (7th Cir.1984).

In 1986, Congress amended the FCA again "to encourage any individual knowing of Government fraud to bring that information forward." S. REP. NO. 345, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266. "To revitalize the qui tam provisions, the amendment provided incentives for private enforcement, including increased monetary awards, adopted a lower burden of proof, and allowed the qui tam plaintiff to remain a party to the action even if the Government intervenes." *Stinson,* 944 F.2d at 1154. Our focus is on whether the 1986 amendments extend jurisdiction to include McKenzie's suit.

## IV.

### 1. "Based Upon" a Public Disclosure

 The first issue to be addressed is whether there has been a "public disclosure" because if there has not, there is no jurisdictional bar. *United States* ex rel. *Fine v. Advanced Sciences, Inc.,* 99 F.3d 1000, 1004

---

**3.** McKenzie alleges that BellSouth violated sections of the Act that prohibit "knowingly present[ing], or caus[ing] to be presented [to the United States government] a false or fraudulent claim for payment or approval," and "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1), (7).

(10th Cir.1996); *United States ex rel. Springfield Terminal Ry. v. Quinn,* 14 F.3d 645, 651 (D.C.Cir.1994); *Cooper v. Blue Cross and Blue Shield,* 19 F.3d 562, 565 n. 4 (11th Cir.1994). Although the FCA was designed to encourage corporate whistleblowers, a "relator must be a true whistleblower." *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.,* 41 F.3d 1032, 1035 (6th Cir.1994). She is unable to pursue the suit and collect a percentage of the recovery if the case is based upon information that has previously been made public or if the claim has already been filed by another. *Id.*

■ A public disclosure occurs when information has been disseminated through "a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [General] Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A). "Public disclosure" also includes documents that have been filed with a court, such as discovery documents and a plaintiff's complaint. *Quinn,* 14 F.3d at 652; *Federal Recovery Servs., Inc. v. United States,* 72 F.3d 447, 450 (5th Cir.1995) ("[A]ny information disclosed through civil litigation and on file with the clerks office should be considered a public disclosure of allegations in a civil hearing for the purposes of section 3730(e)(4)(A)." (quoting *United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1350 (4th Cir.), *cert. denied,* 513 U.S. 928, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994))).

■ The district court concluded that McKenzie's allegations were "based upon" information publicly disclosed through two lawsuits against companies owned by Bell-South. The first lawsuit, the *Dorris* case, was filed by Ronald Dorris against South Central Bell in a Tennessee state court, asserting wrongful discharge and tort claims. One of Dorris's allegations was that South Central Bell employees were incorrectly reporting the time at which a repair was made if the repair was not made within the time promised. Although not directly addressing fraud against federal facilities, Dorris's allegations are nearly identical to some of McKenzie's claims,[4] and the suit was widely disseminated by Tennessee newspapers.[5]

The second lawsuit, *Falsetti,* was a qui tam action filed against another division of BellSouth, Southern Bell. *Falsetti* contained allegations similar to those in McKenzie's complaint, regarding federal customers in Southern Bell's region, Florida, Georgia, North Carolina, and South Carolina. In fact, large portions of McKenzie's complaint are nearly identical to portions of the *Falsetti* complaint, and McKenzie acknowledges that she showed her supervisor a newspaper article concerning the *Falsetti* case.

McKenzie contends that because her allegations involve only South Central Bell's practices in Tennessee the *Falsetti* allegations do not constitute public disclosure, even though both claims are ultimately against BellSouth. The Tenth Circuit considered a similar claim in *United States ex rel. Fine v.*

---

**4.** Dorris's complaint alleges fraudulent conduct similar to that alleged by McKenzie. For example, the complaint states:

11. In 1990, Defendant South Central Bell, by and through it employees, ... informed Plaintiff and other South Central Bell repair employees that they were to falsify cable records on repair orders, in order for the Jackson District of South Central Bell to adhere to the qualifications of the Tennessee Public Service Commission.
12. Plaintiff was "written-up" by Defendant Matthews and subsequently had an entry placed in his personnel file by Defendant Matthews because plaintiff failed to falsify repair orders on a customer's outside phone line.
13. Plaintiff complained about the falsification of said cable codes to the Public Service Commission[.] Plaintiff drew further attention to the falsification of codes, fraud, the misuse

of company funds, the misuse of public funds, and fraud towards the Public Service Commission in said fraudulent practices.
Joint Appendix 110.

**5.** An article by *The Commercial Appeal,* a Memphis newspaper, described Dorris's allegations:

[E]mployees said they were told to backdate reports, so that if a customer's telephone service repair was promised by 5 p.m. and the technician didn't complete the repair until 6 p.m., he would enter 4:55 p.m. on the report. Richard Locker, *False Service Reports Found at Bell, Ex–Worker Says,* COMMERCIAL APPEAL (MEMPHIS), Apr. 3, 1994, at Joint Appendix 135. The *Chattanooga Times* ran a similar story on April 4, 1994. *See Ex–Bell Worker Says Report Falsified,* CHATTANOOGA TIMES, Apr. 4, 1994, at B1; Joint Appendix 137.

*Sandia Corp.*, 70 F.3d 568 (10th Cir.1995). In *Sandia*, the relator brought an action against Sandia Corporation, which is one of several laboratories owned by the Department of Energy. The court concluded that the district court lacked subject matter jurisdiction because previous disclosures had "sufficiently alerted the government to the likelihood that Sandia" would be engaged in fraudulent behavior. *Id.* at 571. The plaintiff contended that even though there had already been a public disclosure of the fraudulent practices, the disclosure concerned only "the national laboratories' practices" and the practices of two of the laboratories while his complaint specifically addressed Sandia. The court rejected this argument and concluded: "Because the [Government Accounting Office] report and the congressional hearing set the government on the trail of the alleged fraud without Mr. Fine's assistance, we believe it would be contrary to the purposes of the FCA to exercise jurisdiction over his claim." *Id.*

It is clear that McKenzie's allegations were publicly disclosed prior to the filing of her suit through the *Falsetti* and *Dorris* cases and the publicity related to them. Therefore, we must next consider whether McKenzie's qui tam action is "based upon" these prior disclosures. *Cooper v. Blue Cross and Blue Shield*, 19 F.3d 562, 565 n. 4 (11th Cir.1994). McKenzie urges us to adopt the standard for "based upon" articulated by the Fourth Circuit in *United States* ex rel. *Siller v. Becton Dickinson & Co.*, 21 F.3d 1339 (4th Cir.), *cert. denied*, 513 U.S. 928, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994). *Siller* concluded that "based upon" means "derived from" and, therefore, "a relator's action is 'based upon' a public disclosure of allegations only where the relator has actually derived from that disclosure the allegations upon which his qui tam action is based." *Id.* at 1348. Under this interpretation two identical suits could proceed so long as each relator did not derive his or her claim from the other.

The Tenth Circuit adopted a different interpretation of "based upon" in *United States* ex rel. *Precision Co. v. Koch Indus.*, 971 F.2d 548 (10th Cir.1992), *cert. denied*, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993). In *Precision*, the court interpreted "based upon" to mean "supported by," which in-

cludes any action based even partly upon public disclosures. The court concluded: "Congress chose not to insert the adverb 'solely', and we cannot, because to do so would dramatically alter the statute's plain meaning." *Id.* at 552. The court continued: "Not only are we governed by the plain language of the statute, we must also be mindful that 'statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction.'" *Id.* (quoting *F & S Constr. v. Jensen*, 337 F.2d 160, 161 (10th Cir.1964)). Three other circuits have adopted similar approaches. *See Cooper v. Blue Cross and Blue Shield*, 19 F.3d 562, 567 (11th Cir.1994) (holding "based upon" to mean "supported by" and "qui tam suits" to be based upon public disclosures even if the relator had independent evidence of wrongdoing); *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992) (holding a qui tam suit based upon public disclosures even though it contained some new allegations because "the allegation repeats what the public already knows"); *United States* ex rel. *Dick v. Long Island Lighting Co.*, 912 F.2d 13, 17 (2d Cir.1990) ("[I]f the information on which a qui tam suit is based is in the public domain, and the qui tam plaintiff was not a source of that information, then the suit is barred."). The Tenth Circuit later clarified its interpretation by explaining that a court "must determine whether 'substantial identity' exists between the publicly disclosed allegations or transactions and the qui tam complaint." *U.S.* ex rel. *Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1006 (10th Cir.1996).

We conclude that the interpretation of "based upon" endorsed by the Tenth Circuit is the most consistent with the FCA's purpose. The jurisdictional requirements are designed to restrict the number of persons who can bring qui tam actions and thereby avoid parasitic suits. In construing "based upon" to mean "supported by" we effectively preclude individuals who base any part of their allegations on publicly disclosed information from bringing a qui tam action. *Precision*, 971 F.2d at 552. McKenzie's claims are clearly "based upon" public disclosures. They are not merely similar to the allegations in *Dorris* and *Falsetti*; portions

of McKenzie's complaint are virtually identical to the complaint in *Falsetti*, and McKenzie admits, in her complaint, awareness of the *Falsetti* allegations. In addition, her allegations are the same as some of the allegations made by Dorris and reported in the Tennessee newspapers. Therefore, it is not difficult to conclude that McKenzie's lawsuit is based, at least in part, upon the allegations brought in *Dorris* and *Falsetti*.

### 2. "Original Source"

Because we have determined that McKenzie's allegations were based upon public disclosures, she must have been an "original source" for the district court to have jurisdiction over her action. 31 U.S.C. § 3730(e)(4)(A); *Precision*, 971 F.2d at 553. An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

In construing the term "original source," other courts have "impose[d] a conjunctive requirement—direct and independent—on qui tam plaintiffs." *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 656 (D.C.Cir.1994); *United States ex rel. Stinson v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir.1991); *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2d Cir.1990); *Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494, 505 (7th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). The word "direct" is usually interpreted as "marked by absence of intervening agency," *Stinson*, 944 F.2d at 1160, while "independent knowledge" is not "dependant on public disclosure." *Houck*, 881 F.2d at 505.

The meaning of "original source" is a matter of first impression for this Circuit, and the other circuits have taken different approaches to determining whether a relator is an original source. The Second Circuit, for example, has concluded that "a plaintiff also must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based." *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2d Cir.1990).

In *Dick*, the public disclosure was a prior lawsuit with the same allegations. The court determined that because the relators were not the source of the allegations in the first lawsuit, they did not qualify as original sources.

The Ninth Circuit adopted a similar construction in *Wang v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir.1992). In *Wang*, the court concluded that the relator had direct and independent knowledge of the alleged fraud, but because someone else publicly disclosed the alleged fraud first, the relator was barred from bringing suit. *Id.* at 1417–18. "To bring a qui tam suit, one must have had a hand in the public disclosure of allegations that are a part of one's suit." *Id.* at 1418. Under this interpretation, one who discloses an allegation directly or indirectly by reporting it to the government or the media is an original source. *Id.* at 1419. The court reasoned:

> If, however, someone republishes an allegation that already has been publicly disclosed, he cannot bring a qui tam suit even if he has "direct and independent knowledge" of the fraud. He is no "whistleblower." A "whistleblower" sounds the alarm; he does not echo it. The Act rewards those brave enough to speak in the face of a "conspiracy of silence" and not their mimics.

*Id.* (citing S. REP. NO. 345, 99th Cong., 2d Sess. at 6, *reprinted in* 1986 U.S.C.C.A.N. 5271).

The Eleventh Circuit, on the other hand, has taken a different approach and concluded that the FCA only requires direct and independent knowledge. The court came to this conclusion because the Second and Ninth Circuits' requirement "does not appear in the plain language of the statute, and we find no support for it in the legislative history." *Cooper*, 19 F.3d at 568 n.13. In *Cooper*, the relator had independently researched the alleged fraud and had reported it to members of Congress. His knowledge "was obtained independently of the allegations disclosed at the [Congressional] hearing." *Id.* at 568. The court, relying on legislative history, concluded that " 'a party with knowledge of fraud against government should be able to

maintain a qui tam action so long as he had some of the information in advance of the public disclosure.' " *Id.* (quoting Senator Grassley). The Third, Fourth and Tenth Circuits have adopted similar approaches. *See United States* ex rel. *Fine v. Advanced Sciences, Inc.,* 99 F.3d 1000, 1006–07 (10th Cir.1996) ("[D]irect knowledge is knowledge gained by the relator's own efforts and not acquired from the labors of others.... [T]o be independent the relator's knowledge must not be derivative of the information of others, even if those others may qualify as original sources."); *United States* ex rel. *Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1355 (4th Cir.1994) ("[A] qui tam plaintiff need not be a source to the entity that publicly disclosed the allegations on which the qui tam action is based in order to be an original source.... [He need only have] direct and independent knowledge of the information on which the allegations in the public disclosure [are] based."); *United States* ex rel. *Stinson v. Prudential Ins. Co.,* 944 F.2d 1149, 1160 (3d Cir.1990) ("[A] relator who would not have learned of the information absent public disclosure did not have 'independent' information within the statutory definition of 'original source.' " (citing *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.,* 881 F.2d 494, 505 (7th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990))).

The D.C. Circuit recently articulated a third approach to determining whether a relator is an "original source" in *United States* ex rel. *Findley v. FPC–Boron Employees' Club,* 105 F.3d 675 (D.C.Cir.1997). In *Findley,* the court adopted an analysis similar to that employed by the Second and Ninth Circuits but with one crucial difference—the relator must have informed the government of the allegations before they become public disclosures. In addition, to be an original source, one must "have direct and independent knowledge of the information on which the publicly disclosed allegations are based." *Id.* at 690. The court defined "direct" to mean first-hand knowledge and "independent" to mean that the information known by the relator does not depend or rely upon the public disclosures. *Id.*

In declining to adopt the Second and Ninth Circuits' approach, the court explained that "the statute only contemplates an 'original source' being a 'source' to the government" and not to the world at large. *Id.* at 690. The court noted that the statute itself does not impose the requirement that the "original source" provide information to the entity that made the public disclosures, merely requiring that the relator "voluntarily provide[ ] the information to the government." *Id.;* 31 U.S.C. § 3730(e)(4)(B).

Although this Court has not yet addressed the issue of when one is an "original source," it had an opportunity to consider the FCA in *United States* ex rel. *Taxpayers Against Fraud v. General Elec. Co.,* 41 F.3d 1032, 1035 (6th Cir.1994). In *Taxpayers,* this Court discussed the requirements for being a "whistleblower":

> [T]he relator must be a true 'whistleblower'; therefore, he is precluded from collecting a bounty if the case is brought on the basis of information that has already been publicly disclosed, or if someone else has filed the claim first.

*Id.* at 1035. We find it difficult to understand how one can be a "true whistleblower" unless she is responsible for alerting the government to the alleged fraud before such information is in the public domain. Therefore, we adopt the approach of the District of Columbia Circuit and conclude that, to be an original source, a relator must inform the government of the alleged fraud before the information has been publicly disclosed.

We reach this conclusion based on Congress's purpose in amending the Act and the plain meaning of the Act. Before the 1986 amendments, jurisdiction under the FCA had experienced two extremes: The original statute which allowed suits to proceed even though they had been copied from federal indictments, and the 1943 amendments to the Act, which precluded all suits in which the government already had knowledge of the fraud even if that knowledge came from the relator. *See United States* ex rel. *Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *United States* ex rel. *Wisconsin v. Dean,* 729 F.2d 1100, 1106 (7th Cir.1984).

"The purpose of the qui tam provisions of the FCA is to encourage private individuals who are aware of fraud being perpetrated

against the Government to bring such information forward." H.R. REP. NO. 660, 99th Cong., 2d Sess. 22 (1986). The interpretation of "original source" adopted by this Court today is consistent with this goal and "is most likely to bring 'wrongdoing to light' since, by barring those who come forward only after public disclosure of possible False Claims Act violations from acting as qui tam plaintiffs, it discourages persons with relevant information from remaining silent and encourages them to report such information at the earliest possible time." *Dick*, 912 F.2d at 18.

■ At the same time, this approach furthers Congress's second goal in amending the FCA: "[T]o prevent 'parasitic' qui tam actions in which relators, rather than bringing to light independently discovered information of fraud, simply feed off of previous disclosures of government fraud." *Siller*, 21 F.3d at 1347. Anyone who alerts the government and is a "true whistleblower" deserves any reward that may be obtained by pursuing a qui tam action under the FCA. However, the individual who sits on the sidelines while others disclose the allegations that form the basis of her complaint should not be able to participate in any award. This would be contrary to the purpose of the statute.

■ In adopting the D.C. Circuit's approach over that of the Second and Ninth Circuits we conclude that, although both approaches require that the relator be the first to "blow the whistle," the D.C. Circuit's requirements do more to promote the FCA's mission—to alert the government that a fraud is being perpetrated against it. The statute's requirement that a relator file his or her action under seal for the U.S. Attorney's Office to review before proceeding with the action supports this interpretation. The government has the clearest interest in the information and the FCA was designed to give whistleblowers the incentive to provide the government with such information. Further, this interpretation protects the "true whistleblower," the person who reports fraud to the government before it is publicly disclosed, by allowing her to maintain a qui tam action. As the court explained in *Findley*, "[a] person who provided information to the government that subsequently was uncovered by a reporter and printed in the newspaper would

still be able to maintain a qui tam action." *Findley*, 105 F.3d at 690.

■ To qualify as an original source, the relator must have direct and independent knowledge of the information on which the publicly disclosed allegations are based. In addition, the relator must provide the government with the information prior to any public disclosure. There is no additional requirement that the relator be responsible for providing the information to the entity that publicly disclosed the allegation of fraud as long as the relator provides the information to the government prior to any public disclosure.

■ Based on this interpretation, it is clear that McKenzie is not an "original source." Her complaint was filed three years after *Falsetti* and well after the allegations in *Dorris* were made public. She was not the first to inform the government of the alleged fraud being perpetrated by BellSouth through a subsidiary, nor was she the first to report alleged fraud on the part of South Central Bell. McKenzie is not a "true whistleblower" and cannot benefit as if she were one.

## V.

Even though we have determined that McKenzie cannot bring a qui tam action under the FCA, we must still consider her claim for retaliation. The FCA, to further encourage whistleblowers, provides protection for those who pursue or contribute to qui tam actions. Specifically, § 3730(h) states:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others *in furtherance of an action under this section,* including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (emphasis added). The legislative history indicates that Congress

understood "that few individuals will expose fraud if they fear their disclosures will lead to harassment, demotion, loss of employment or any other form of retaliation." S.REP. NO. 345, 99th Cong., 2d Sess. 35 (1986), *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5300.

For a retaliation claim to be successful, the plaintiff must show that she was engaged in a protected activity and that her employer knew about it. *See Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 951 (5th Cir.1994) (citing S.REP. No. 345, 99th Cong., 2d Sess. 35 (1986), *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5300), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). The statute provides examples of the types of activity that are protected, including investigation, initiation of a suit, and testimony, but these examples are not exclusive and the legislative history indicates that "[p]rotected activity should ... be interpreted broadly." S.REP. No. 345, 99th Cong., 2d Sess. 35 (1986), *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5300. We conclude that the activity engaged in by McKenzie, including bringing the alleged fraud to the attention of her supervisors and showing them a newspaper article describing a qui tam action in Florida involving similar allegations of fraud, are protected activities within the meaning of the Act.

Section 3730(h) "provides relief only if the whistleblower can show by a preponderance of the evidence that the employer's retaliatory actions resulted 'because' of the whistleblower's participation in a protected activity." *Id.* Several courts have concluded that § 3730(h) allows internal or intracorporate whistleblowers to recover for retaliation. *See Robertson,* 32 F.3d at 951 (noting district court cases that have concluded that § 3730(h) protects internal whistleblowers). However, these courts have given the internal whistleblower a heavier burden to carry when seeking relief under § 3730(h). For example, the Fifth Circuit, in *Robertson v. Bell Helicopter Textron,* concluded that the plaintiff's complaints to his employer about allegedly fraudulent activity did not constitute a protected activity because "he never used the terms 'illegal,' 'unlawful,' or 'qui tam action.'" *Id.* In addition, the *Robertson* court concluded that the plaintiff's investigative activities were within the scope of his employment and his employer had no reason to know that such investigations extended beyond the requirements of his position in furtherance of a qui tam action. *Id. See also United States* ex rel. *Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1522 (10th Cir.1996) (concluding that plaintiff's retaliation claim was properly dismissed because her activities were part of her employment duties and she had not otherwise indicated an intent to pursue a qui tam action or to report alleged fraud to government officials).

McKenzie advocates the interpretation of § 3730(h) adopted by the district court in *Mikes v. Strauss,* 889 F.Supp. 746 (S.D.N.Y. 1995), another case involving an internal whistleblower. In *Mikes,* the court concluded that the plaintiff's activities, observing inappropriate use of tests, investigating the use of tests, and reporting her conclusions to her employers, constituted protected activities. *Id.* at 752. The court, in considering whether the employer had sufficient knowledge of the plaintiff's activities, interpreted *Robertson* as requiring the following: "[A]n employee must supply sufficient facts from which a reasonable jury could conclude that the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a qui tam action against it." *Id.* at 753. Based on this interpretation, McKenzie has sufficiently stated activities that would have given South Central Bell reason to believe that she was contemplating a qui tam action. We believe the *Mikes* interpretation of *Robertson* to be correct.

Even if we were to adopt a more limited interpretation of *Robertson,* McKenzie's allegations are distinguishable in two respects. First, McKenzie alleges that she showed her supervisors a "newspaper article about a similar fraud being perpetrated by the telephone company in Florida," a reference to the *Falsetti* litigation, which, as noted above, closely parallels McKenzie's qui tam action. Since *Falsetti* involved a fraud perpetrated against the federal government by another subsidiary of BellSouth, McKenzie's putting BellSouth on notice that she was aware of the *Falsetti* allegations would constitute facts considered significant by the *Robertson*

court. Second, McKenzie's activities were not within the scope of her employment and, coupled with her presentation of the newspaper article, served to put South Central Bell on notice of the possibility of a qui tam action. Therefore, McKenzie's retaliation claim should not have been dismissed.

### VI.

Because McKenzie's claim is based upon publicly disclosed information and because she is not an "original source" as that term is defined above, the district court was correct in determining that it did not have subject matter jurisdiction over her qui tam action. However, the district court improperly dismissed McKenzie's claim for retaliation because she has adequately alleged that her employer was aware that she was contemplating pursuing a qui tam action under the FCA. Discovery shall reveal whether these allegations can be supported. Therefore, we AFFIRM the dismissal of the qui tam action, but we REVERSE the district court's order dismissing McKenzie's retaliation claim, and REMAND for further proceedings consistent with this decision.

ALAN E. NORRIS, dissenting. Because I would affirm the district court, I respectfully dissent.