UNITED STATES of America, ex
rel. Clay STONE, Plaintiff,

v.

AMWEST SAVINGS ASSOCIATION, a
Texas Savings and Loan Association,
et al., Defendants.

No. Civ.A.3:96–CV–0549–G.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 2, 1997.

Steven Andrew Shaw, Anthony F. King, James T. McLaughlin, Roxann E. Henry, Elizabeth J. Leatherbarrow, Howrey & Simon, Washington, DC, William Frank Carroll, Gerald Richard Groh, Donohoe Jameson & Carroll, Dallas, TX, Mark John Zimmermann, Turner Dealy Zimmermann & Grimmer, Dallas, TX, for Plaintiff.

Joseph P. Covington, David W. DeBruin, Jenner & Block, Washington, DC, Donald F. Hawbaker, Jay J. Madrid, Greg A. Sivinski, Madrid & Brooks, Dallas, TX, for Defendants.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of the defendant AmWest Savings Association ("AmWest") to dismiss for lack of subject matter jurisdiction and to dismiss for failure to state a claim upon which relief can be granted, or, alternatively, for summary judgment ("AmWest's Motion"). For the reasons state below, the claims of Clay Stone ("Stone"),

brought as relator on behalf of the United States of America, are dismissed for lack of subject matter jurisdiction. Because this court lacks subject matter jurisdiction, the motion to dismiss for failure to state a claim, the alternative motion for summary judgment, and AmWest's state law counterclaims are not addressed.

## I. BACKGROUND

This case has its origins in the savings & loan ("S & L") crisis of the late 1980's. In October 1988, AmWest acquired the assets and liabilities of eleven failed S & L institutions from the Federal Savings and Loan Insurance Corporation ("FSLIC").[1] Affidavit of Mark A. Mesec ("Mesec Affidavit") ¶ 3, attached as Exhibit A to AmWest's Motion. As a condition of this sale, AmWest and the FSLIC entered into an Assistance Agreement guarantying payment to AmWest for certain losses and expenses related to specific "covered" assets. *See generally* Assistance Agreement, attached to Original Complaint and Demand for Jury Trial ("Original Complaint"). Disputes regarding the proper classification and management of the acquired assets and the reimbursement of related expenses and losses required AmWest, the FSLIC, and other governmental agencies to remain in nearly constant contact for the next several years. Mesec Affidavit ¶ 25. During this time, the Federal Deposit Insurance Corporation ("FDIC")[2] received and reviewed numerous reports of AmWest's operations. Affidavit of Bryceon Sumner ("Sumner Affidavit") ¶¶ 2–5.

AmWest hired the relator, Stone, to serve as President and Chief Executive Officer of one of its newly acquired subsidiaries. Declaration of Clay Stone ("Stone Declaration") ¶ 2, attached as Exhibit B to Plaintiff's Opposition to Defendants' Motion to Dismiss. Stone served in that capacity and as the President and CEO of several other AmWest

---

1. The failed S & L's were actually purchased by NuOlney Savings Association and Adam Corporation/Group, predecessors of AmWest. Mesec Affidavit ¶ 3; Affidavit of Bryceon Sumner ¶ 2. For the sake of simplicity, however, the court will use the name "AmWest" to refer to all of these entities collectively.

2. The FSLIC was abolished by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, which vested its assets in the FDIC. 12 U.S.C. § 1821a(1) and (2). See *Federal Deposit Insurance Corporation v. Henderson*, 61 F.3d 421, 423 n. 1 (5th Cir .1995).

subsidiaries for roughly two years. *Id.* ¶ 3; Mesec Affidavit ¶ 7. In December 1990 Stone and AmWest severed their working relationship. Mesec Affidavit ¶ 7. Thereafter, AmWest filed suit against Stone and his new employer, Statewide Capital, Inc. (the "Statewide Litigation"). Affidavit of Jay J. Madrid ("Madrid Affidavit") ¶ 2, attached as Exhibit B to AmWest's Motion. AmWest alleged *inter alia* that Stone, while still an AmWest employee, engaged in self-dealing during negotiations for an asset sale between AmWest and Statewide. *See* Declaration of Jay J. Madrid ¶ 3, attached as exhibit to Motion to Transfer filed November 8, 1995. Stone counterclaimed, alleging that AmWest fired him in violation of the Federal Deposit Insurance Act's "whistleblower" provisions. First Amended Third–Party Action and Counterclaims at 3–4, attached as Exhibit B–1 to Madrid Affidavit. Following a jury verdict in favor of AmWest, United States Magistrate Judge Nancy K. Johnson entered judgment notwithstanding the verdict that both sides take nothing. *AmWest Savings Association v. Statewide Capital, Inc.*, No. H–92–1725 (S.D.Tex.1997) (Final Judgment), attached as Exhibit B–5 to Madrid Affidavit.

By 1991, the federal government had initiated an investigation into AmWest's business dealings. Stone Declaration ¶¶ 6–7; Sumner Affidavit ¶ 14. AmWest avers, without demur from Stone, that the government granted Stone immunity from criminal prosecution, in exchange for which Stone testified about questionable business activities he observed and undertook as CEO of the AmWest subsidiary. Brief in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted or, Alternatively, for Summary Judgment ("Defendants' Brief") at 7. Apparently, however, no criminal charges resulted from the investigation. Sumner Affidavit ¶ 14.

In October 1992, AmWest sued the United States in the Claims Court concerning the "coverage" designation of certain acquired assets (the "Claims Court Litigation"). Exhibit A–2 to Mesec Affidavit. In September 1993, AmWest and the Federal Deposit Insurance Corporation ("FDIC") agreed to redesignate some of the acquired assets as "covered," thereby settling the Claims Court Litigation. *See* Redesignation Agreement attached as Exhibit A–3 to Mesec Affidavit; Mesec Affidavit ¶ 18.

In December 1992, Stone, on behalf of himself and the United States, brought this suit against AmWest. *See generally* Original Complaint. Stone, as relator, alleges that AmWest presented false claims, obtained false payments, and fraudulently avoided payment obligations in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1), (a)(2), & (a)(7). First Amended Complaint and Demand for Jury Trial ("Amended Complaint") ¶¶ 57–65. These allegations stem from AmWest's business dealings with the federal government under the Assistance Agreement relating to the 1988 acquisition. See generally *id.* In June 1995, following the government's election not to intervene, the *qui tam* complaint was unsealed and ordered served on AmWest. *See* Sumner Affidavit ¶¶ 14–15.

## II. *ANALYSIS*

### A. *Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction. *Owen Equipment and Erection Company v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. Const. art. III §§ 1–2. Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

■ A party attempting to invoke federal court jurisdiction bears the burden of establishing that jurisdiction. *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994). Dismissal for lack of subject matter jurisdiction "is only proper when 'it appears certain that the plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief.'" *McAllister v. Federal Deposit Insur-*

*ance Corporation,* 87 F.3d 762, 765 (5th Cir. 1996) (quoting *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir.1995)). In ruling on a motion to dismiss, the court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications Inc.,* 117 F.3d 900, 904 (5th Cir.1997); see also *McAllister,* 87 F.3d at 765.

## B. *False Claims Act*

The qui tam[3] provisions of the False Claims Act ("FCA") authorize private persons to bring actions on behalf of the United States against those who have committed fraud on the federal government. 31 U.S.C. § 3730(b). To prevent abuse of the *qui tam* device, Congress has expressly limited the district courts' power to hear these claims. *United States ex rel. Findley v. FPC–Boron Employees' Club,* 105 F.3d 675, 680 (D.C.Cir. 1997), *petition for cert. filed,* 66 USLW 3109 (Jun. 16, 1997) (No. 97–157); *United States ex rel. S. Prawer and Company v. Fleet Bank of Maine,* 24 F.3d 320, 326 (1st Cir. 1994). These jurisdictional bars prevent the court from adjudicating certain enumerated classes of *qui tam* suits. *See* 31 U.S.C. § 3730(e).

In this case, Stone alleges that AmWest defrauded the federal government in violation of the FCA by (1) shifting expenses and revenue between "covered" and "uncovered" assets; (2) failing to manage the "covered" assets properly; (3) mischaracterizing "uncovered" assets as "covered"; and (4) obtaining payment from the FDIC for defaulted Government National Mortgage Association loans. *See* Amended Complaint ¶¶ 20–56. In its motion to dismiss, AmWest maintains

3. "Qui tam" is the abbreviated version of the phrase "qui tam pro domino rege quam pro si ipso in hac parte sequitur" which, literally translated, means he "who sues on behalf of the King as well as for himself." Black's Law Dictionary 1251 (6th ed.1990). The private plaintiff suing on behalf of the government in a *qui tam* action is known as the "relator." See *id.* at 1289.

4. This reading of "based upon" is not at odds with the Fifth Circuit's interpretation of similar language in *Federal Recovery Services, Inc. v.*

that two of the FCA jurisdictional bars, 31 U.S.C. §§ 3730(e)(3) & (e)(4), prevent this court from adjudicating this suit. Defendants' Brief at 10–24.

### 1. *31 U.S.C. § 3730(e)(3)—Bar on Parasitic Lawsuits*

Subsection (e)(3) of Section 3730 of Title 31 of the United States Code prohibits "piggy-back" *qui tam* lawsuits. See *Findley,* 105 F.3d at 680. The statute states:

> In no event may a person bring ... [a *qui tam* ] action ... which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

31 U.S.C. § 3730(c)(3).

■ In the absence of Fifth Circuit authority, this court is persuaded by the First Circuit's analysis of this statute in *Prawer.* See generally *Prawer,* 24 F.3d at 327–29. Under *Prawer,* the determination of whether a *qui tam* suit is "based upon allegations or transactions which are the subject of" previous government litigation, *see* § 3730(e)(3) above, requires the court to examine the relationship between the suits. *Id.* If the *qui tam* action receives support from the earlier case without giving the government any useful return (other than the potential for monetary recovery), the basis and the subject of the lawsuits are the same.[4] *Id.* at 328.

■ AmWest contends that § 3730(e)(3) bars the present suit because it is "based upon" transactions which were the subject of the Claims Court Litigation and the State-wide Litigation—two lawsuits, it claims, to which the federal government was a party. Defendants' Brief at 10–11. Stone, on the other hand, submits that the *qui tam* suit and the Claims Court Litigation were not

*United States,* 72 F.3d 447 (5th Cir.1995). In *Federal Recovery Services,* the Fifth Circuit held that an action even *partly* based upon public information satisfied the "based upon" requirement of § 3730(e)(4). *Id.* at 451. Like the interpretation of the Fifth Circuit, the First Circuit formulation does not require identical allegations; rather, it turns on a *similarity* of pleading that creates a host/parasite relationship. See *Prawer,* 24 F.3d at 328–29.

"based upon" the same transactions and that the government was not a party to the Statewide suit. Plaintiff's Opposition to Defendants' Motion to Dismiss at 6–7. Because the court rejects Stone's first claim, it need not address his second.

The Claims Court Litigation arose out of disagreements between AmWest and the FSLIC/FDIC concerning the proper scope and application of the Assistance Agreement. *See generally* Claims Court Complaint, attached as Exhibit A–2 to the Mesec Affidavit. Interpreting the Assistance Agreement and determining the rights and duties of the parties under it formed the crux of the Claims Court Litigation. See, e.g., *id.* at 50–51, 53–54 (complaining of the government's performance under the agreement and seeking to redesignate certain assets as "covered"). The later filed *qui tam* suit also concerns the propriety of payments made under and the management and characterization of assets pursuant to the Assistance Agreement. Amended Complaint ¶¶ 3–4. Granted, the roles are reversed in the present suit—the United States (through Stone as relator) complaining and AmWest defending—but the underlying transactions and assets are the same.

This similarity clearly brings these cases within the plain language of the jurisdictional bar. *See* 31 U.S.C. § 3730(c)(3). Furthermore, these cases exhibit the host/parasite relationship absent from the cases in *Prawer*. Unlike the *qui tam* suit in *Prawer*, Stone's suit seeks to remedy "fraud" arising from a situation previously addressed by the government and AmWest. Cf. *Prawer*, 24 F.3d at 328 ("because this case is seeking to remedy fraud that the government has not yet attempted to remedy, it is, as a threshold matter, wholly unlike the one the drafters of § 3730(e)(3) ... had in mind...."). Therefore, this court is without jurisdiction to hear this case because it is based upon transactions which were the subject of an earlier civil suit to which the federal government was a party. 31 U.S.C. § 3730(e)(3).

### 2. *31 U.S.C. § 3730(e)(4)—Bar on Lawsuits Based Upon Public Information*

Subsection (e)(4) of Section 3730 of Title 31 of the United States Code provides an additional restraint on federal court jurisdiction over FCA *qui tam* actions. This subsection prohibits the district court from exercising jurisdiction over *qui tam* cases

> based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

In applying this section, the court must determine "1) whether there has been a 'public disclosure' of allegations or transactions, 2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and 3) if so, whether the relator is the 'original source' of the information." *Federal Recovery Services*, 72 F.3d at 450.

### a. *Public Disclosure*

 Information is publicly disclosed when placed in the public domain through the news media, through a governmental investigation or audit, or through a judicial proceeding. *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 938 (6th Cir.1997). Information revealed through civil litigation is considered publicly disclosed. *Federal Recovery Services*, 72 F.3d at 450. Litigation disclosures include all filings, and in the absence of a protective order, information obtained during discovery though never filed with the court. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Company*, 944 F.2d 1149, 1158 (3rd Cir.1991). Information discovered during the course of an audit or investigation is also "publicly disclosed," even if disclosed only to employees previously unaware of the wrongdoing. *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 323 (2nd Cir.1992).

 Stone claims that the allegations and transactions involved in the present suit were not publicly disclosed because previous litigation did not involve identical claims and the governmental investigation and audit

were insufficiently thorough. Plaintiff's Opposition at 15–16. These assertions border on the disingenuous. The propriety of payments, the sufficiency of management, and the characterization of assets under the Assistance Agreement were litigated both in the Claims Court Litigation and in the Statewide Litigation. *See generally* Claims Court Complaint; First Amended Third–Party Action and Counterclaims. Because these transactions were litigated prior to the initiation of Stone's *qui tam* action, the transactions were publicly disclosed. *Federal Recovery Services,* 72 F.3d at 450. Furthermore, the government's investigation, in which Stone himself participated, provides an independent and sufficiently public source of disclosure. *See Doe,* 960 F.2d at 323–24.

#### b. *"Based Upon"*

The Fifth Circuit has expressly adopted the Tenth Circuit's interpretation of when a *qui tam* suit is "based upon" publicly available information. *Federal Recovery Services,* 72 F.3d at 451. According to the Tenth Circuit, the plain language of § 3730(c)(4) applies to "an FCA qui tam action even partly based upon publicly disclosed allegations or transactions...." *United States ex rel. Precision Co. v. Koch Industries, Inc.,* 971 F.2d 548, 552 (10th Cir.1992) (emphasis added), *cert. denied,* 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993). Nearly every circuit which has addressed the issue has adopted this interpretation of "based upon." *McKenzie,* 123 F.3d at 939–40; *Findley,* 105 F.3d at 682. In the instant case, the court finds that Stone's complaint is "based upon" publicly disclosed information because the allegations and transactions contained therein are "substantially similar to those in the public domain." See *Findley,* 105 F.3d at 682.

#### c. *Original Source*

█ Even though a relator's claims are based upon publicly disclosed information, he may avoid the jurisdictional bar of § 3730(e)(4) by qualifying as an "original source." 31 U.S.C. § 3730(e)(4)(A), (B). The statute defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action ...." *Id.* § 3730(e)(4)(B). Courts have held that a relator, to qualify as an original source, must prove he (1) has "direct" and "independent" knowledge of the information and (2) "voluntarily" provided the information to the government prior to filing suit. *United States ex rel. Barth v. Ridgedale Electric, Inc.,* 44 F.3d 699, 702–03 (8th Cir.1995); see also *McKenzie,* 123 F.3d at 942; *Findley,* 105 F.3d at 690; *United States ex rel. Fine v. Chevron, U.S.A., Inc.,* 72 F.3d 740, 743 (9th Cir.1995) (en banc), *cert. denied,* 517 U.S. 1233, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996).

For the first element, "[t]he word 'direct' is usually interpreted as 'marked by absence of intervening agency,' while 'independent knowledge' is not 'dependant on public disclosure.'" *McKenzie,* 123 F.3d at 940 (citations omitted). In the instant case, Stone clearly obtained direct knowledge of the inner workings of AmWest during his tenure as President and CEO of the AmWest subsidiary. *See, e.g.,* Stone Declaration ¶¶ 3–5. Likewise, it is reasonable to assume that at least some of the allegations made in Stone's suit are based upon this knowledge, independent of the public disclosures. Therefore, Stone satisfies the first element of the "original source" test.

For the purposes of § 3730(e)(4)(B), "voluntary" is interpreted as "uncompensated" or "unsolicited," not as "uncompelled." See *Fine,* 72 F.3d at 744; *Barth,* 44 F.3d at 704. To qualify, the relator must prove that his disclosure was made "'of [his] own free will without valuable consideration ... [or] without any present legal obligation ... or any such obligation that can accrue from the existing state of affairs.'" *Fine,* 72 F.3d at 744 (quoting Webster's Third New International Dictionary 2564 (1981) (definition 1(g))).

The court concludes that Stone cannot meet this test. Stone became aware of questionable business dealings during his tenure as President and CEO of an AmWest subsidiary. Stone Declaration ¶¶ 3–5. Yet he failed to report the "fraud" while in AmWest's employ. See *id.* ¶¶ 6–7. Stone finally

made his disclosures seven months after leaving AmWest during the course of the government's criminal fraud investigation. See *id.* In return for his statements, the government gave Stone immunity from criminal prosecution. Like the relator in *Barth,* Stone "did not 'voluntarily' bring the information to the government and now rewarding him for merely complying with the government's investigation [would be] outside the intent of the [FCA]." *Barth,* 44 F.3d at 704. Furthermore, Stone has already received valuable compensation in the form of criminal immunity in return for his statements, so "[t]he government has no further need to rouse him from slumber and embolden him to perform ...." *Fine,* 72 F.3d at 745. Because the court concludes that his disclosures were not voluntary, Stone may not qualify as an "original source." See *id.* Therefore, this court is without jurisdiction to adjudicate Stone's claims because this FCA *qui tam* suit is based upon publicly disclosed transactions. 31 U.S.C. § 3730(e)(4).

### III. *CONCLUSION*

For the reasons stated, this case must be **DISMISSED** without prejudice for want of subject matter jurisdiction. However, in light of the order of June 26, 1995, which provides that (1) the United States "is entitled to intervene in this action, for good cause, at any time" and (2) "the Court will solicit the written consent of the United States before ruling or granting its approval" to a dismissal, settlement, or other discontinuance of this action, judgment will not be entered forthwith, as F.R.Civ.P. 58(1) usually requires. Instead, this memorandum order will be served on the United States to enable it to express its objection, if any, to this ruling or to exercise its right to intervene. If no objection or motion to intervene is received from the United States by **December 19, 1997,** judgment in accordance with this memorandum order will be entered.

**SO ORDERED.**