**FOUNDATION FOR FAIR CONTRACTING, LTD.,**
Plaintiff,

v.

**G & M EASTERN CONTRACTING & DOUBLE E, LLC, Defendants.**

Civil No. 01–0034(JBS).

United States District Court,
D. New Jersey.

April 29, 2003.

Steven A. Berkowitz, Esquire, Berkowitz & Associates, P.C., Marlton, NJ, for Foundation for Fair Contracting, Ltd.

Thomas Joseph Hirsch, Ocean, NJ, for G & M Eastern Contracting, Inc.

## *OPINION*

SIMANDLE, District Judge.

This matter comes before the Court upon defendant G & M Eastern Contracting's motion for summary judgment, and plaintiff Foundation for Fair Contracting's cross-motion for partial summary judgment. Plaintiff Foundation for Fair Contracting ("FFC") is a nonprofit organization in New Jersey that monitors public works projects for compliance with state and federal wage laws, and defendant G & M Eastern Contracting ("G & M") does public contracting work in New Jersey, primarily for housing authorities, such as the Camden Housing Authority. Defendant G & M had entered into a contract

with the Camden Housing Authority for contracting work on the "Roosevelt Manor Project."

FFC brings the present case as a "Relator" under the False Claims Act, 31 U.S.C. § 3730(b)(1), asserting that defendants G & M and Double E violated the Davis–Bacon Act, 40 U.S.C. § 276a, et seq., by submitting false wage certifications to the Camden Housing Authority on a project funded by the U.S. Department of Housing and Urban Development ("HUD") wherein defendants misclassified workers, paying them less than what is required, in violation of the Davis–Bacon Act, and misstating the numbers of hours worked and employees utilized. The principal issue presented is whether these claims are jurisdictionally barred because they were already "subject of a civil suit or an administrative civil money penalty proceeding" in which the government was a party, pursuant to 31 U.S.C. § 3730(e)(3), *infra*. For the reasons discussed herein, defendant G & M's motion for summary judgment will be viewed as a motion to dismiss for lack of subject matter jurisdiction which will be granted, and plaintiff FFC's cross-motion for summary judgment will be denied, and the Amended Complaint will be dismissed for lack of subject matter jurisdiction.

## I. *BACKGROUND*

The Camden Housing Authority put out an Invitation to Bid on a project known as "Pitched Roof, Mechanical Room Construction and Heating System Replacement for Branch Village NJ10–1, Roosevelt Manor NJ10–3" (hereinafter "Roosevelt Manor Project" or "Project"). (Sariotis Aff. ¶ 10.) G & M submitted a bid for the project on December 1, 1999, and was awarded the contract on December 21, 1999. (*Id.* ¶ 11.) G & M received its Notice to Proceed on January 3, 2000, and thereafter commenced work on the Project, and continues to work on the Project at the present time. (*Id.* ¶ 12.)

G & M was provided an initial wage determination with the contract prior to bid, (Sariotis Aff. ¶ 14 & Ex. B), but an addendum to the bid forms was issued prior to the bid indicating there was going to be a modification to the wage determination, (*Id.* Ex. C), which G & M never received. (*Id.* ¶ 15.) Subsequently, the Camden Housing Authority supplied not a modification but a new wage determination which would have required G & M to pay substantially more wages for certain trades. (*Id.* Ex. D.)

In July 2000, the Carpenter's Local Union 393 in Gloucester, New Jersey, requested FFC to investigate payment practices at the Project, at which point Thomas St. John, Director of plaintiff FFC, began an investigation. (St. John Aff. ¶¶ 4–5.) Thomas St. John had received a phone call from Ron Kraus of the carpenters local union. (St. John Depo. 10/11/02, at 43.) Kraus stated that he had been at the project site speaking to G & M and Double E workers, who indicated to him that they were not properly classified and not being paid the prevailing wages as required by the Davis–Bacon Act. (*Id.;* St. John Aff. ¶ 6.) Kraus later brought those workers to St. John's office in August 2000, at which point St. John took their statements as part of the investigation. (St. John Depo. 10/11/02, at 43–48; Pierce Aff., St. John Aff. Ex. A; Paulk Aff., St. John Aff. Ex. B; Nock Aff., St. John Aff. Ex. C.) St. John, as part of his investigation, also requested and received partial certified payroll records from Camden Housing Authority in July 2000, (St. John Aff. ¶ 7), and received copies of the workers' paycheck stubs and paychecks. (St. John Aff. ¶ 12 & Ex. D.)

On or about July 26, 2000, Christina Tinsley, a Program/Budget Analyst of the Camden City Housing Authority, (Tinsley

Aff. ¶ 1), raised the issue of G & M's non-compliance with Department of Labor wage rates in a letter to George Sariotis, Vice President of G & M. (Tinsley Letter, 7/26/00, Sariotis Aff. Ex. A; Sariotis Aff. ¶ 17.) After speaking to each other in a telephone conversation on August 9, 2000, Sariotis responded by letter dated August 14, 2000, in which he addressed the reasons why G & M believed the new wage determination was in error. (Sariotis Letter, 8/14/00, Sariotis Aff. Ex. E.) In the letter, Sariotis suggested that the Camden Housing Authority withhold payments from G & M and place them in an escrow account until the matter was resolved. (Id.; Sariotis Aff. ¶ 17.)

Thomas St. John sent to Tinsley the copies of the affidavits dated August 31, 2000, of Guy Pierce, an employee of G & M, and Walter Nock and Leonard Paulk, employees of Double E, all of whom were interviewed by Thomas St. John, regarding their wages, as discussed above. (Tinsley Aff. ¶ 4.) St. John spoke with HUD Special Agent Mark Higgins of the Office of the Inspector General regarding the Davis–Bacon Act violations, and turned over documentation supporting the worker's claims. (St. John Aff. ¶ 12.) St. John also sent a letter dated September 20, 2000, to Ruth Ritzema of the Office of the Inspector General, notifying her of the Davis–Bacon violations allegedly being committed by G & M and Double E, and stating that he had already turned over documents to Higgins regarding this. (St. John Aff. ¶ 15.) Tinsley was copied on this letter. (Tinsley Aff. ¶ 3.) Based on the information in St. John's letter as well as

the workers' affidavits, Tinsley contacted the DOL via telephone on October 30, 2000, and agreed to meet with DOL regarding the alleged violations of G & M. (Id. ¶ 5 & Ex. A.)

It appears that G & M believed the wage determinations issue to arise out of an error in the addendum to the wage determinations that G & M had allegedly never received. G & M's attorney sent a letter dated October 23, 2000, seeking the two wage determinations issued by the DOL for the Camden Housing Authority for certain trades, one bearing General Decision No. NJ990001 and the other Decision No. NJ990005, as well as the collective bargaining agreements on which those wage determinations were based. (Sariotis Aff. ¶ 19 & Ex. F.) After further communications between G & M and DOL, a letter from Terry Sullivan of Wage Determinations of DOL was sent to Wayne Horbert, Director of Office of Labor Relations of HUD, on or around July 11, 2001, indicating that 2 wage rates for Carpenters, Drywall Hangers (# CARP0623B) and Plumbers/Pipefitters (# PLUM0322A) were erroneous, and should have been lower. (Sariotis Aff. Ex. H.)

Meanwhile, DOL conducted an investigation regarding the wages and proper classifications of G & M's workers after receiving word from Tinsley in October 2000 about the possible Davis–Bacon Act violations.[1] See DOL Investigation, Attachmt. to Pl.'s Br. The DOL investigation concluded that rates within the wage determination in the contract were incorrect and should have been lower:

---

1. A "DBRA Narrative" provides a summary of the DOL investigation, and states that it was initiated "as a result of a request by Christina Tinsley." (DBRA Narrative, Sariotis Aff. Ex. L.) The summary also states, "It was also discovered that Mr. Thomas St. John

of the Foundation for Fair Contracting (FFC) had conducted an investigation of his own into the pay practices of G & M Eastern Contracting and some of its sub-contractors." (Id.)

[I]t was determined that 990001 was the wage determination contained in the contract, but that two rates contained therein, the carpenter's rate and the plumber's rate, were not residential rates. As a result, the Wage & Hour National Office issues a Letter of Inadvertence (LOI) changing those rates to the same rates that were contained in NJ 990005. The rates were therefore changed as follows:

| Classification | Original rate in 990001 | Rate per LOI |
| --- | --- | --- |
| Carpenter, drywall Hangers | $27.14 base; 42% + $.15 fringe | $18.57 + 28% |
| Plumber/pipefitter | $26.46 base; $15.10 fringe | $14.8; $5.80 |

(DOL Investigation Report, Attachmt. to Pl.'s Br, at GM007447.) In addition, the DOL concluded that certain workers were misclassified at Double E, Mozak Plumbing and G & M, and that employees' work logs at Double E did not match those of payroll certifications submitted. (*Id.*) The DOL investigation reported that Double E would pay $28,330.27 for back wages; Mozak Plumbing would pay $32,993.09 for back wages; and G & M would pay $17,195.74 for back wages. (*Id.*)

In a letter to Christina Tinsley of the Camden Housing Authority dated February 11, 2002, Corlis Sellers of the Department of Labor reported that the DOL had concluded an investigation of G & M and Double E under the Davis Bacon and Related Acts (DBRA), and the Contract Work Hours and Safety Standards Act. (Sellers Letter, 2/11/02, Def.'s Br. Ex. A.) The letter indicated that the investigation disclosed monetary violations resulting from misclassification, and that DBRA back wages found to be due had been paid in the amount of $17,195.74 by G & M, and $28,330.27 by Double E.[2] (*Id.*)

In the DOL investigation, G & M was represented by its attorney, Thomas Hirsch, Esq. Hirsch's letter to John Kelly of DOL dated January 30, 2002, states that "G & M contests the classification of its employees as determined by the Department of Labor," but was nevertheless enclosing four bank checks to settle the matter with the DOL as to Double E, Ray Mozak Plumbing, and G & M.[34] (Hirsch Letter, 1/30/02, Sariotis Aff. Ex. N.) In a letter dated February 19, 2002, to Hirsch, John Kelly of the DOL wrote that the recent investigation, which covered the period March 1, 2000 to March 1, 2002, disclosed that the G & M workers are subject to the Davis–Bacon Act, and that the Davis–Bacon work "was not properly classified but workers were paid the correct rates for the improper work classifications." (Kelly Letter, 2/19/02, Def.'s Br. Ex. B.) Kelly, indicating that the DOL would be closing its file on the matter, stated that G & M "continues to contest the classification of its employees as determined by the Department of Labor but has agreed to pay back wages found due." (*Id.*) Kelly also sent a letter to Tinsley on

---

**2.** DBRA back wages found due were also paid by R.G. Mozak Plumbing in the amount of $32,993.09. (*Id.*)

**3.** Hirsch further states that "[p]ursuant to the agreement reached with the Department of Labor, these payments by my client constitutes full and final satisfaction of all the Government[']s claims against G & M Eastern relative to the Camden Housing Authority

Project involving alleged Davis–Bacon Act wages and violations." (Hirsch Letter, 1/30/02, Sariotis Aff. Ex. N.)

**4.** The four bank checks are for the amounts of $28,330.27; $1,228.60; $15,966.94; and $32,993.09, though the name of the entity to whom the checks are made is redacted. (Sariotis Aff. Ex. J.)

February 11, 2002, indicating that the DOL had concluded its investigation, and that "[c]onsequently, all with held funds may now be released to the prime contractor." (Kelly Letter, 2/11/02, Sariotis Aff. Ex. K.)

Plaintiff FFC filed this cause of action on January 4, 2001, under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729, alleging that defendant G & M's certified payroll records submitted to the City of Camden Housing Authority pursuant to their contract on the Roosevelt Manor Project misstates the number and classification of employees, and the number of hours worked by employees, and therefore constitute a false claim. The complaint was initially filed under seal, pending the United States' decision whether to intervene in the matter. On July 6, 2001, the United States filed a notice of election to decline intervention, providing:

> Although the United States declines to intervene, it respectfully refers the Court to 31 U.S.C. § 3730(b)(1), which allows a Relator to maintain the action in the name of the United States; providing, however, that, in the context of settlement, the 'action may be dismissed only if the Court and the Attorney General give written consent to the dismissal and their reasons for consenting.'

Notice, 7/6/01. G & M filed its Answer to the Complaint on October 9, 2001, and plaintiff filed an Amended Complaint on April 1, 2002, to add defendant Double E.[5] Plaintiff in the Amended Complaint alleges that G & M's submissions of certified payroll records on the Roosevelt Manor Project failed to comply with the Davis–Bacon Act and Related Act regulations because they inaccurately reported the number of hours worked by employees as well as the number and classification of employees utilized, and therefore constitute false claims under 31 U.S.C. § 3729 (Count One), and that Double E's submissions of certified payroll records pursuant to its subcontract with G & M constitute false claims under 31 U.S.C. § 3729 (Count Two) because it also inaccurately reported the number of hours worked by employees as well as the number and classification of workers. (Amended Compl.) The United States again elected not to intervene on April 2, 2002. G & M filed an Answer to the Amended Complaint on May 14, 2002. (Answer, 5/14/02.)

G & M filed its motion for summary judgment on November 22, 2002. In its opposition papers, plaintiff FFC cross-moved for summary judgment, claiming it is entitled to an order declaring that G & M and Double E misclassified their workmen. The Court heard oral argument on the cross-motions on March 12, 2003. At oral argument, the Court requested the parties to submit supplemental briefing on the issue of whether the Department of Labor's proceeding constitutes an "administrative civil money penalty proceeding" under § 31 U.S.C. § 3730(e)(3). Defendant submitted its supplemental briefing by letter dated March 27, 2003, and plaintiff submitted its supplemental briefing by letter dated April 4, 2003.

## II. *DISCUSSION*

Defendant moves for summary judgment, arguing that the investigation by the Department of Labor into the misclassification of workers constituted an "administrative civil money penalty proceeding" that bars plaintiff's False Claims Act under 31 U.S.C. § 3730(e)(3); in the alterna-

---

**5.** Default was entered as to Double E on December 9, 2002, for failure to plead or otherwise defend.

tive, defendant argues that the FFC is not an "original source" of information under 31 U.S.C. § 3730(e)(4), and hence, cannot bring this action as a "Relator"; and defendant argues that the misclassification claim is not an FCA claim because it must be, and has been, resolved by the Department of Labor. Plaintiff cross-moves for partial summary judgment, claiming that it is entitled to an order declaring G & M and Double E misclassified their workmen.

### A. Standard for Determining Jurisdiction

■ Although defendant filed a motion for summary judgment, defendant's underlying argument asserts lack of subject matter jurisdiction under the applicable federal statute, namely, the False Claims Act at 31 U.S.C. § 3730(e)(3) & (4). *See, e.g., United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1156–57 (3d Cir. 1991) (affirming district court's granting of motion to dismiss complaint for lack of subject matter jurisdiction under § 3730(e)(4)); *see also United States ex rel. Johnson v. Shell Oil Co.*, 26 F.Supp.2d 923, 928 (E.D.Tex.1998) (denying motion to dismiss complaint for lack of jurisdiction under § 3730(e)(3)). To the extent that defendant moves for dismissal based on lack of subject matter jurisdiction, such grounds constitute a factual attack under Rule 12(b)(1), Fed.R.Civ.P. *See Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n. 4 (3d Cir.2002) (contrasting

factual attacks to facial attacks, which contest the sufficiency of the pleadings). Under such a challenge, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited discovery hearings. *Id.* The parties in the present case have fully briefed and documented their positions on this issue, and the Court has heard the arguments of counsel and will now address the threshold jurisdictional issue.

### B. Section 3730(e)(3)

■ Defendant G & M asserts that the present claim is barred by 31 U.S.C. § 3730(e)(3) because the government was a party to an administrative penalty proceeding against both Double E and G & M prior to the filing of the FFC's complaint under the False Claims Act under 31 U.S.C. § 3729,[6] and had negotiated all claims it had against those two defendants on the Camden Housing Authority Project, resulting in a settlement between those defendants and the government.

"The [False Claim] Act's jurisdictional scheme is designed to promote private citizen involvement in exposing fraud against the government, while at the same time prevent parasitic suits by opportunistic late-comers who add nothing to the exposure of the fraud." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675–76 (8th Cir.1998) (quoting *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1511 (8th Cir.1994), *cert. denied,* 515 U.S. 1142,

---

6. That statute provides, in relevant part:
   Any person who
   (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval;
   (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

   (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; ...
   is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....
   31 U.S.C. § 3129(a)(1)-(3).

115 S.Ct. 2579, 132 L.Ed.2d 829 (1995)). 31 U.S.C. § 3730(e)(3) provides:

> **In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.**

31 U.S.C. § 3730(e)(3). Under section 3730(e)(3), " '[i]f the government files an action to enforce the FCA, a would-be relator may not later bring any action based on the same underlying facts.' " *Costner,* 153 F.3d at 676 (quoting *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 746 (9th Cir.1993), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994)). The provision therefore typically bars "only a 'qui tam action based upon allegations or transactions pleaded *by the government* in an attempt to recover for fraud committed against it.' " *Costner,* 153 F.3d at 676 (quoting *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine,* 24 F.3d 320, 328 (1st Cir.1994)) (emphasis in original).

Although the Third Circuit has stated, in the context of distinguishing subsection (e)(3) from (e)(4), that (e)(3) "precludes private plaintiffs from bringing suits based on information or allegations that are the subjects of a suit in which the government is a party . . .," *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1156–57 (3d Cir.1991), there is no Third Circuit case that elaborates on what constitutes an "administrative civil money penalty proceeding" for purposes of subsection (e)(3). Clearly, that term encompasses a much broader spectrum than just civil suits.

The Third Circuit's decision in *Stinson* is instructive because it analyzed the broadness of the term "civil hearing" as used in subsection (e)(4)(A). That provision is as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, *civil,* or administrative *hearing,* in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of information.

31 U.S.C. § 3730(e)(4)(A). The Third Circuit considered whether a later filed qui tam suit was barred by subsection (e)(4)(A) because it was based on disclosures revealed in discovery exchanged in an earlier suit. Noting that the statute provided no definition of the term, the Third Circuit liberally construed the meaning of "hearing" in subsection (e)(4)(A): "We believe . . . that 'in the course of a civil, criminal, or administrative hearing' should be interpreted broadly to include allegations and information disclosed in connection with civil, criminal, or administrative litigation." *Stinson,* 944 F.2d at 1154. The Third Circuit concluded, "We therefore construe a civil 'hearing' as used in subsection (e)(4)(A) to encompass the full range of proceedings in a civil lawsuit such as that represented by the [earlier] litigation." *Id.* at 1157. After also finding that "public access to civil discovery that is not subject to a protective order leads us to conclude that information received as a result of such discovery should be deemed based on 'public disclosure' for purposes of the FCA jurisdictional bar," the Third Circuit affirmed the district court's dismissal of the complaint for lack of jurisdiction.

The Third Circuit's construction of "civil hearing" in subsection (e)(4)(A), along with the statutory purpose of promoting citizen involvement to expose fraud against the

government, while avoiding parasitic litigation by opportunistic late-comers, *see Costner, supra*, 153 F.3d at 675–76, favors a broad interpretation of subsection (e)(3) in this case. Here, the DOL investigation found that two rates within the wage determination specified in the contract were incorrect. *See* DOL Investigation, Attachmt. to Pl.'s Br, at GM007447. The investigator further found that certain employees of Double E were classified as laborers though they were engaged in carpenter duties, *see id.* at GM007451, and that employees' time records of hours worked did not match the employers' payroll certifications, *see id.* at GM007451. The investigation thus concluded that back wages from Double E were owed in the amount of $28,330.27 for miscalculations in the wages of employees Anthony Jones, Walter Nock, and Leonard Paulk. *See id.* at GM007453. Sariotis agreed to pay the back wages. *Id.* at GM007452. As for Mozak Plumbing, the DOL investigation revealed that Mozak paid 65% of all hours worked on the job at the laborer's rate, though the workers did other types of work. Though Mozak disputed the exact number of hours that certain employees could be considered to be doing plumbers' work, Mozak, Sariotis and the DOL came to a negotiated agreement, providing for Mozak to pay a total back wage figure of $32,993.09 for six different employees' wages.[7] *See id.* at GM007454, GM007460. The DOL investigation also found that certain employees of G & M were misclassified by the firm, and G & M paid back wages in the amount of $17,195.74, for employees' Sam Harris, David Hazzard, Tyanne Ingalls, Guy Pierce, and Guy Shields.[8] *See id.* at GM007461.

The DOL investigation thus sought remuneration for the wage misclassifications and incorrect wage hours worked as submitted by G & M, Double E, and R.G. Mozak Plumbing on the Roosevelt Manor Project, which constituted Davis–Bacon Act violations. The letters from John Kelly and Corlis Sellers to Sariotis and Tinsley confirm that the DOL investigated Ms. Tinsley's complaint regarding G & M's alleged violations under the Davis–Bacon act, and that G & M, Double E, and R.G. Mozak Plumbing indeed paid back wages found due as a result of misclassifications of workers. *See* Sellers' Letter, 2/11/02, Sariotis Aff. Ex. K.

Here, the Department of Labor's investigation of possible misclassification of G & M and Double E workers provided the government with the facts and the amount of compensatory and liquidated damages that were needed to redress its inquiry into defendant's possible mispayment of wages. Due to the DOL investigation, G & M Eastern and Double E indeed paid back wages as a result of their Davis–Bacon and Related Acts violations. Construing subsection (e)(3) to allow plaintiff's qui tam suit to proceed, even though it is based on the same facts underlying the DOL investigation, would provide for a second recovery by another entity despite the resolution of the government's investigation into the very same transactions, in contravention of the statutory purpose. Since the purpose of a relator's recovery is to redress harm suffered by the federal government, to permit such a claim to proceed after the government's enforcement proceeding has obtained redress for

---

7. Those employees are: Ed Bonczek, Jose Figueroa, Jose Parades, Charles Potter, Wilson Zambrano, and Ed Zimmer. *See id.* at GM007454.

8. The DOL investigation report also includes a summary for G & M for back wages in the amount of $33,955.83, but this summary appears to be an earlier version of the summary for $17,195.74.

the government would make little statutory sense.

The First Circuit case *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d 320 (1st Cir.1994), which discusses whether a proceeding is "based upon allegations or transactions which are the subject of" a previous matter for purposes of § 3730(e)(3), also provides support for this conclusion. In *Prawer*, the district court had dismissed sua sponte plaintiff's qui tam action which alleged that defendants (legal counsel for Fleet and FDIC) had created false records designed to defraud the government into paying Fleet approximately $1.6 million for notes pursuant to the put-back provisions of a previous agreement. FDIC had also commenced a separate action, since settled, against plaintiff Prawer and other defendants for enforcement of the notes, to which Prawer responded with affirmative defenses, counterclaims, and a third–party complaint against Fleet and another defendant. The district court had determined that the allegations made and transactions implicated in plaintiff's complaint were already at issue in the case brought by the FDIC, and that the FDIC sufficiently constituted the "government" for purposes of § 3730(e)(3). The First Circuit considered whether the present action was barred by the previous action by analyzing whether the two cases could be viewed as having a "host/parasite" relationship. The First Circuit vacated the district court's dismissal, determining that the present case was capable of providing "useful or proper return" to the government, and was thus not parasitic, because the FDIC had not proceeded against the defendants in the present action, for fraud or otherwise in the previous case. Furthermore, the FDIC could not have previously sued Fleet for fraud in the previous suit because under Fed.R.Civ.P. 14(a), the plaintiff was not permitted to assert a claim against Fleet

arising out of a transaction different than the subject matter of the FDIC's claim against Prawer. Accordingly, the False Claims Act suit could not be held to be "based upon allegations or transactions" which were the subject of the previous FDIC action. Notably, as to the first point, the First Circuit stated that

> [B]ecause this case is seeking to remedy fraud that the government has not yet attempted to remedy, it is, as a threshold matter, wholly unlike the one the drafters of § 3730(e)(3) almost certainly had in mind and sought to preclude (i.e. a qui tam action based upon allegations or transactions pleaded by the government in an attempt to recover for fraud committed against it).

*Id.* at 328.

Unlike *Prawer*, plaintiff's qui tam suit is merely "parasitic" in receiving support from the previous "host" case without giving any "useful or proper return" to the government. Here, plaintiff's complaint alleges that defendants G & M and Double E submitted weekly certified payroll records which failed to accurately report the number of hours worked by employees, as well as the number and classification of employees utilized on the project in the preceding week. Plaintiff's original complaint was based upon the statements of Guy Pierce, Leonard Paulk, and Walter Nock, *see* Compl. Attachmt., all of whom were included in the DOL investigation of these very same transactions, in which the DOL and defendants had already engaged in investigative proceedings to resolve the issue of back wages due to the misclassification and alleged miscalculation of wages for certain workers. Plaintiff's brief sets forth no different set of employees' wages on which its complaint is based, and to the extent that plaintiff alleges false certifications based on number of workers used, it provides no evidence in support of this

claim. Moreover, unlike *Prawer*, plaintiff does not assert additional wage transactions that would set this action apart from the DOL investigation. Rather, plaintiff's suit seeks to remedy fraud that the government has already investigated within its full regulatory authority, culminating in a resolution acceptable to the DOL, based on the same set of underlying facts. Under *Prawer*, plaintiff's complaint is "based upon transactions or allegations which are the subject of" another proceeding in which the government is a party.

The Court is further persuaded by defendant's argument that the DOL's investigation constituted an "administrative civil money penalty proceeding" because of the DOL's abilities under the regulatory provisions setting forth the procedures for disputes concerning payment of wages, overtime pay, or classification of wages, *see* 29 C.F.R. § 5.11. Under these procedures, the Administrator notifies the contractor of the investigation findings, and of any debarment proceedings if applicable, as well as the opportunity for hearing if there is a dispute. *See* 29 C.F.R. § 5.11. In addition, the DOL has the power to refer the matter for restitutionary measures, or to criminal action if the violations are willful and in violation of a criminal statute, *see* 29 C.F.R. § 5.10, and it may institute debarment proceedings under 29 C.F.R. § 5.12. The DOL may also conduct investigations for enforcement of contractual provisions under 29 C.F.R. §§ 5.5 and 5.6, wherein liquidated damages may be assessed against the contractor under the Contract Work Hours and Safety Standards Act. *See* 29 C.F.R. §§ 5.5, 5.6. This regulatory framework, providing for defendant to be subject to penalties of debarment, restitution, liquidated damages or

criminal action during an DOL investigation, favors the finding that the proceeding instituted by the DOL constitutes an "administrative civil money penalty proceeding" under § 3730(e)(3), and the fact that the DOL chose to compromise and settle for the back wages with no additional monetary civil penalty is not dispositive of the issue. *See also United States v. TLT Construction Corp.*, 138 F.Supp.2d 237, 244 (D.R.I.2001) ("Although §§ 5.5(a)(9) and 5.11(a) do not specifically reference disputes involving laborers, they indicate that disputes evolving from the Davis–Bacon Act will be resolved through the Department of Labor's procedures and not in federal court.").

Moreover, it does not matter that the DOL did not plead all possible violations and remedies in its enforcement investigation here, because the statutory purpose of § 3730(e)(3) speaks in the alternative of barring new suits "based upon allegations *or* transactions" which were the subject of the prior suit or administrative proceeding. In this case, all allegations in the Amended Complaint arise from the very same *transactions* previously the subject of the DOL's proceeding against G & M Eastern and Double E. It would not matter that the precise claims here are not identical to the claim upon which DOL focused, where the transactions are identical between the DOL's penalty proceeding and the present case.

■ The Court has also considered defendant's argument that FCA claims arising from Davis–Bacon Act violations generally are foreclosed. The Court disagrees and finds that in an appropriate case, an FCA claim can be predicated upon a Davis–Bacon violation.[9]

---

**9.** Defendant raises *United States ex rel. Windsor v. DynCorp, Inc.,* 895 F.Supp. 844, 851 (E.D.Va.1995) as support for its contention

that because the DOL has sole responsibility for resolving classification issues, plaintiff's allegations regarding defendant's misclassifi-

Despite this conclusion, plaintiff's argument that its FCA claim is viable under *DynCorp* fails. Plaintiff asserts that its complaint remains viable because the DOL investigation was merely to determine whether employees were properly classified pursuant to the regulatory procedures set forth in 29 C.F.R. § 5.11.[10] The district court in *DynCorp* relied on 29 C.F.R. § 5.6, which provides the enforcement provision that ensures compliance with the labor standards clauses. The regulation provides in part that the Administrator shall make investigations as necessary, and that the DOL will furnish an enforcement report "detailing the labor standards violations disclosed by the investigation and any action taken by the contractor to correct the violative practices, including any payment of back wages." 29 C.F.R. § 5.6(b). Although the *DynCorp* court stated that "a Davis–Bacon Act worker classification dispute, by itself, is not an FCA claim because such disputes must be resolved by the Department of Labor," it considered the viability of FCA civil suits, particularly "[w]here the contractor's statement may be determined to be false without regard to complex Davis–Bacon Act classification regulations." *DynCorp*, 895 F.Supp. at 852.

Where the DOL investigation was conducted according to the regulatory procedures of 29 C.F.R. §§ 5.5, 5.6 and 5.11 referred to in *DynCorp*, plaintiff's complaint falls within the ambit of cases that could be pursued in court because the resolution of its claims regarding number of employees utilized and number of hours worked (i.e., comparing employees' log books with company certifications) may be determined *without* regard to the Davis–Bacon Act classification regulations. As discussed above, however, to the extent that plaintiff alleges false wage certifications regarding misclassifications and in-

cations do not give rise to an FCA claim. In *DynCorp*, plaintiff brought a qui tam action against a contractor for violations of the False Claims Act. The district court specifically addressed the issue of whether a claim that the defendant intentionally misclassified, and therefore, underpaid, certain workers, stated a claim under the FCA. The court granted summary judgment on this ground, reasoning that it is impossible to determine whether defendant submitted a false claim to the government without first determining whether defendant actually misclassified an employee. Defendant relies on the district court statement that "a Davis–Bacon Act worker classification dispute, by itself, is not an FCA claim because such disputes must be resolved by the Department of Labor." *Id.; see also Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 760, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) ("Disputes over the proper classification of workers under a contract containing Davis–Bacon provisions must be referred to the Secretary [of Labor] for determination.") The court did not, however, discount the viability of an FCA claim regarding the falsity of a contractor's statement, such as a contractor's misrepresentation of the wages actually paid to its

employees or the frequency with which they receive paychecks, all of which are not dependent upon the determination of complex Davis–Bacon classification regulations. Contrary to defendant's argument, *DynCorp* thus does not foreclose suit for violations of the Davis–Bacon Act.

**10.** Plaintiff argues that defendant's "settlement" with DOL is not a settlement that resolves the misclassification issue under 31 U.S.C. § 3730(c)(2)(B). That provision provides, in part:

> The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

31 U.S.C. § 3730(c)(2)(B). Subsection (c)(1) specifically addresses the Government's rights in cases where the Government proceeds with the action. *See* 31 U.S.C. § 3730(c)(2). Because the Government declined to intervene in this case, subsection (c)(2)(B) has no import for this case.

correct number of hours worked, the DOL has already required defendants to pay back wages for these very same discrepancies. These transactions, as noted, were the subject of the DOL proceeding. Because plaintiff does not allege transactions separate and apart from those already examined by the DOL for the misclassification of workers requiring the determination of complex classification regulations, and the miscalculation of hours worked, as previously resolved in the DOL investigation, plaintiff's complaint is "based upon allegations or transactions which are the subject" of the DOL's investigation. That plaintiff alleges in its complaint that defendants submitted false wage certifications regarding the number of employees utilized does not change this determination, because aside from this allegation in plaintiff's complaint, plaintiff fails to point to any facts supporting such a claim. Thus, where the substance of plaintiff's complaint does not extend beyond the boundaries of the DOL investigation, plaintiff's complaint is "based upon allegations or transactions which are the subject" of the DOL's previous investigative proceeding, and plaintiff is thus precluded from bringing suit.

In conclusion, based on the statutory purpose, the regulatory framework for investigations into complaints concerning payment of wages which provides for imposition of penalties, and the Third Circuit's construction of a similar subsection of the False Claims Act in *Stinson*, the Court finds that the present action, based entirely upon the facts underlying the DOL investigation, is "based upon transactions or allegations which are the subject of a civil suit or an administrative civil money penalty proceeding," and defendant's dispositive motion will be granted.[11] Plaintiff's amended complaint will be dismissed for lack of subject matter jurisdiction. *See Costner, supra,* 153 F.3d at 676 (referring to § 3730(e)(3) and (e)(4) as "jurisdictional bars"); *United States ex rel. Stone v. AmWest Sav. Ass'n,* 999 F.Supp. 852, 856 (N.D.Tex.1997) (referring to § 3730(e)(3) and (e)(4) as "jurisdictional bars" and concluding that "this court was without jurisdiction to hear this case" under § 3730(e)(3) because subsequent qui tam suit was based on same underlying transactions of earlier lawsuit and sought to remedy fraud previously addressed by government); *United States ex rel. Capella v. United Techs. Corp.,* No. 3:94–CV–2063 (EBB), 1999 WL 464536, at *1 (D.Conn. June 3, 1999) (describing § 3730(e)(3) as a " 'first to file' jurisdictional bar").

### C. *Plaintiff's Cross–Motion for Partial Summary Judgment*

Plaintiff asserts that it is entitled to an order proclaiming that defendants G & M and Double E misclassified their workers. As discussed above, plaintiff is precluded from bringing this suit in federal court under § 3730(e)(3). Plaintiff's cross-motion for partial summary judgment request for an order declaring that defendants G & M and Double E misclassified their workers will therefore be denied.

### D. *Unavailability of Relief Against Defendant Double E*

As noted above, defendant Double E has not filed an answer, and default against it was entered by the Clerk on December 9, 2002, pursuant to Rule 55(a), Fed.R.Civ.P.

---

**11.** Defendant alternatively argued that plaintiff does not constitute an "original source of information" under § 3730(e)(4)(A), and would therefore be jurisdictionally barred under that provision. Because defendant's motion is decided under § 3730(e)(3), this argument need not be addressed.

The relief sought against Double E in plaintiff's cross-motion has been denied, as explained in Part II.C, *supra.* It is also clear that default judgment against Double E is unavailable as a matter of law, since plaintiff's claim against Double E is barred by § 3730(e)(3) for the identical reasons already examined above with regard to defendant G & M. The record already discloses that the DOL's investigation and administrative settlement included the same transactions which plaintiff would pursue in this case against Double E, as discussed above. The Court therefore lacks subject matter jurisdiction over plaintiff's claim against Double E. Accordingly, default judgment against Double E is unavailable, and plaintiff's claim against Double E will likewise be dismissed.

### III. *CONCLUSION*

As discussed above, based on the statutory purpose of the False Claims Act and its regulatory framework, plaintiff's claims brought under the False Claims Act against these defendants are barred by 31 U.S.C. § 3730(e)(3) because they are based upon allegations or transactions which were the subject of an "administrative civil money penalty proceeding," which resulted in the DOL obtaining compromise relief of defendants paying back wages. Thus, defendant's motion for summary judgment will be granted on this ground, as the Court lacks subject matter jurisdiction under § 3730(e)(3). Furthermore, plaintiff's request for an order that defendants misclassified their employees will be denied, and the Amended Complaint must be dismissed in its entirety, against both defendants for lack of subject matter jurisdiction. The accompanying Order is entered.